UNITED STATES of America,
Plaintiff-Appellee,

v.

Connie M. HANDY,
Defendant-Appellant.

No. 85–3001.

United States Court of Appeals,
Ninth Circuit.

Submitted Jan. 3, 1985.

Decided Feb. 20, 1985.

Amended May 21, 1985.

Andrew Hamilton, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Alix Foster, Asst. Federal Public Defender, Seattle, Wash., for defendant-appellant.

Farris, Circuit Judge, dissented and filed opinion.

Before SCHROEDER, FARRIS and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

Appellee's motion for bail pending appeal requires an interpretation of an important provision of the Bail Reform Act of 1984, Pub.L. No. 98–473, §§ 202–210, 98 Stat. 1837, 1976–1987 (codified at scattered sections of 18 U.S.C.). The Act provides that a defendant who has been convicted and sentenced to a term of imprisonment shall be detained pending appeal unless the court finds "that the person is not likely to flee or pose a danger to the safety of any other person or the community if released" and "that the appeal is not for purpose of

delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial." 18 U.S.C. § 3143(b). Here, we are required to interpret for the first time the meaning of the phrase "a substantial question of law or fact likely to result in a new trial."

Handy was indicted for conspiracy to import heroin, 21 U.S.C. § 963 (1982), importation of heroin, 21 U.S.C. §§ 952, 960(a)(1), (b) (1982), and possession of heroin with intent to distribute, 21 U.S.C. § 841(a)(1), (b)(1)(A) (1982). She was admitted to bail pending trial upon execution of a $20,000 secured appearance bond.

Handy filed a motion to suppress illegally obtained evidence. She contended that the customs officers who strip searched her and discovered heroin had no "real suspicion" that she was engaged in the smuggling of narcotics. *See United States v. Guadalupe-Garza*, 421 F.2d 876, 879 (9th Cir.1970). After conducting three days of hearings on Handy's suppression motion, the district court issued a written order denying the motion. Handy then stipulated to the facts, including possession of heroin, but reserved the right to challenge on appeal the admissibility of the evidence discovered as a result of the strip search. Shortly thereafter the district court convicted her following a trial on the stipulated facts.

The district court sentenced Handy to two concurrent 18-month terms of incarceration to be followed by a five-year period of probation and a special parole term. At the sentencing hearing, the district court denied Handy's motion for bail pending appeal. The court found by clear and convincing evidence that Handy was not likely to flee or pose a danger to the safety of any other person or the community if released, "and that the appeal is not for the purpose of delay and does raise a substantial question of law." The court nevertheless denied bail on the ground that it did not view reversal to be "likely."

Handy then moved this court to admit her to bail pending appeal on the same terms in effect prior to conviction. Because we conclude that the district court misconstrued the phrase "substantial question likely to result in reversal or an order for a new trial," 18 U.S.C. § 3143(b) (1982), we grant Handy's motion.

The government contends that the disputed phrase plainly limits bail pending appeal to defendants who can demonstrate that they will probably prevail on appeal. Handy argues that, properly interpreted, "substantial" defines the *level of merit* required in the question presented and "likely to result in reversal or an order for a new trial" defines the *type of question* that must be presented. The Third Circuit has recently adopted the view urged by Handy, *United States v. Miller*, 753 F.2d 19 (3d Cir.1985), as has the Eleventh Circuit, *United States v. Giancola*, 754 F.2d 898 (11th Cir.1985). We adopt that interpretation of the statute as well.

The construction of the phrase suggested by the government is untenable for a number of reasons. First, the meaning the government would have us give the phrase is *precisely* the meaning the phrase would have if the word "substantial" were deleted, i.e., if the statute limited bail to cases in which "the appeal is not for purpose of delay and raises a question of law or fact likely to result in reversal or an order for a new trial." A statute should be construed so as to avoid making any word superfluous. *Yamaguchi v. State Farm Mutual Automobile Insurance Co.*, 706 F.2d 940, 946 (9th Cir.1983); *United States v. Mehrmanesh*, 689 F.2d 822, 829 (9th Cir.1982).

Second, Congress did not intend to limit bail pending appeal to cases in which the defendant can demonstrate at the outset of appellate proceedings that the appeal will probably result in reversal or an order for a new trial. The legislative history states that the purpose of the statute is to require "an affirmative finding that the chance for reversal is substantial." S.Rep. No. 98–225, 98th Cong., 2d Sess. 27, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3210. As we discuss further *infra*, a show-

ing that the chance of reversal is substantial is, of course, very different from a showing that reversal is more likely than not.

Finally, requiring the defendant to demonstrate to the district court that its ruling is likely to result in reversal is tantamount to requiring the district court to certify that it believes its ruling to be erroneous. Such an interpretation of the Act would make a mockery of the requirement of Fed.R.App.P. 9(b) that the application for bail be made in the first instance in the district court. We do not think Congress intended to invalidate that requirement *sub silentio* and thereby to vest exclusive authority over post-sentencing bail motions in appellate courts. In fact, the new version of 18 U.S.C. § 3141 adopted in the Act, *see* Bail Reform Act of 1984, Pub.L. No. 98–473, § 203, 98 Stat. 1981, makes it plain that such was not the intent of Congress.

For the above reasons, we reject the government's proposed construction of the statute. Like the Third and Eleventh Circuits, we find that the word "substantial" defines the level of merit required in the question raised on appeal, while the phrase "likely to result in reversal" defines the type of question that must be presented.

Next, we examine the closely related issue of how much merit there must be to a question in order for a court to find it to be a "substantial question." An excessively strict interpretation of the term could result in giving the statute precisely the effect we have already rejected. Fortunately the issue is hardly a new one for the courts; nor does it appear to be one of particular difficulty.

Historically the phrase "substantial question" has referred to questions that are "fairly debatable." Included within this definition have been questions that are novel and not readily answerable.

The question may be "substantial" even though the judge or justice hearing the application for bail would affirm on the merits of the appeal. The question may be new and novel. It may present unique facts not plainly covered by the controlling precedents. It may involve important questions concerning the scope and meaning of decisions of the Supreme Court. The application of well-settled principles to the facts of the instant case may raise issues that are fairly debatable.

*D'Aquino v. United States*, 180 F.2d 271, 272 (11th Cir.1950) (Douglas, Circuit Justice). In *Herzog v. United States*, 75 S.Ct. 349, 351, 99 L.Ed. 1299 (1955), Circuit Justice Douglas stated:

[T]he first consideration is the soundness of the errors alleged. Are they, or any of them, likely to command the respect of the appellate judges? It is not enough that I am unimpressed. I must decide whether there is a school of thought, a philosophical view, a technical argument, an analogy, an appeal to precedent or to reason commanding respect that might possibly prevail.... A question may nevertheless be "substantial" ... if it is novel, or if there is a contrariety of views concerning it in the several circuits, or if the appellate court should give directions to its district judges on the question, or if in the interests of the administration of justice some clarification of an existing rule should be made.

*See also Williamson v. United States*, 184 F.2d 280, 282 (2d Cir.1950) (Jackson, Circuit Justice) ("It is one thing to maintain that the Court of Appeals has given the right answer to a substantial question, but it is another thing to contend that there is no question which merits answer by the only Court invested with ultimate and nationwide authority in the matter.").

The Supreme Court has recently reiterated that a "substantial question" is one that is "fairly debatable." In *Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983), when discussing the level of merit required in a habeas appeal involving a death penalty, the Supreme Court noted that a " 'substantial showing of the denial of [a] federal right,' " 103 S.Ct. at 3394 (quoting *Stewart v. Beto*, 454 F.2d 268, 270 n. 2 (5th Cir.1971), *cert. de-*

*nied,* 406 U.S. 925, 92 S.Ct. 1796, 32 L.Ed.2d 126 (1972)), is " 'something more than the absence of frivolity,' " *id.* (quoting Blackmun, *Allowance of In Forma Pauperis Appeals in § 2255 and Habeas Corpus Cases,* 43 F.R.D. 343, 352 (8th Cir. 1967)).[1] The Court continued on to define a "substantial question" as one that poses issues " 'debatable among jurists of reason,' " *id.* at n. 4 (quoting *Gordon v. Willis,* 516 F.Supp. 911, 913 (N.D.Ga.1980)) (internal citation omitted).

The first circuit to construe the term "substantial question" in the Act we are considering—the Third Circuit—held that it should be given its historic meaning. In *Miller* the Third Circuit said that "substantial question" is one that is "fairly doubtful." 753 F.2d at 23. In our view, that definition is synonymous with "fairly debatable." [2]

We recognize that all the cases we have discussed, other than *Miller* and *Giancola,* involve earlier rules or statutes or arose in different contexts. However, a review of the history of legislative enactments that preceded the adoption of the current statute and a consideration of that statute as a whole persuade us that giving "substantial question" its well-established, customary meaning is fully consistent not only with precedent and logic but with the overall statutory scheme as well.

Prior to 1956, Rule VI of the Rules of Criminal Appeal, 292 U.S. 663–64 (1934), allowed for bail only if the appeal presented a "substantial question." The "substantial question" standard was abandoned when the Federal Rules were amended in 1956, *see* Amendment to Fed.R.Crim.P. 46(a)(2), 350 U.S. 1021 (1956). The new standard allowed for bail as long as an appeal presented a question that was not "frivolous." The 1956 amendment "greatly liberalized" the earlier rule. *Ward v. United States,* 76 S.Ct. 1063, 1064–65, 1 L.Ed.2d 25 (1956) (Frankfurter, Circuit Justice). Subsequently the new rule was incorporated in the Bail Reform Act of 1966, 18 U.S.C. § 3146 *et seq.* (1982) (repealed October 23, 1984). In 1984 the more liberal standard was in turn abandoned. In its place Congress once again adopted a "substantial question" test. By reenacting the "substantial question" standard, the Bail Reform Act of 1984 reintroduced the stricter standard that had been applicable prior to the adoption, in 1956, of the "frivolous"

---

1. We also have had occasion to distinguish the meaning of the terms "substantial" and "not frivolous." In *Gardner v. Pogue,* 558 F.2d 548 (9th Cir.1977), we held that the "substantial question" test is stricter than the "not frivolous" test. We noted that:

    The difference between the terms "not frivolous" and "substantial" is perhaps one of art. Certainly it is subject to subtle analysis. Nevertheless, the very fact that different words are used to describe the standards ... indicates that distinctions do exist.

    *Id.* at 551.

2. In *Giancola,* the Eleventh Circuit stated that "we agree with the Third Circuit's interpretation, though we add ... observations of our own." 754 F.2d at 901. In its "observations" the Eleventh Circuit first commented on the Third Circuit's suggestion of an additional basis for finding a "substantial question." The Third Circuit referred to a question that is "novel, has not been decided by controlling precedent." The Eleventh Circuit suggested that, if viewed in isolation, such a standard might not be sufficient to separate substantial from non-substantial questions. *Id.* We agree with that observa-

tion and think the Third Circuit would also. We also agree with much of the remainder of the Eleventh Circuit's observations. We agree that: (a) "[A] 'substantial question' is one of more substance than would be necessary to a finding that it was not frivolous," *id.;* (b) "[T]here are no blanket categories for what questions do or not constitute 'substantial' ones," *id*; and (c) "Whether a question is 'substantial' must be determined on a case-by-case basis," *id.* There is one observation, however, we do not endorse because it might, if read literally, be viewed as modifying *Miller.* In its "observations" the Eleventh Circuit suggests that a substantial question is a "close" one. *Id.* That is the observation that is singled out by our colleague and forms the basis for his dissenting opinion. If the observation was intended by the Eleventh Circuit as a modification of the *Miller* "fairly debatable" test, as our dissenting colleague suggests it was, we reject it, since we believe the Third Circuit formulation to be more consistent with the statute and long standing precedent. If the observation was intended by the Eleventh Circuit only as an explanation, we reject it since it confuses rather than clarifies the *Miller* standard.

test. Some of the cases discussed above directly examine the stricter "substantial question" requirement that has now once again been adopted. Others examine that phrase in other contexts. All reach similar conclusions as to its meaning.

We do not think it necessary, in order to effectuate Congress' purpose, to ignore the cases that have previously defined the term "substantial question." It was after the term had been consistently construed in the manner we have described that Congress decided to incorporate it in the 1984 Act. Moreover, in that Act, in addition to re-adopting the stricter "substantial question" standard, Congress made other significant changes, designed to toughen the law with respect to bail pending appeal. Most important were the following: (a) as discussed earlier, Congress added a new requirement that the question be of a type that, if resolved in the defendant's favor, would be likely to result in reversal or a new trial; (b) Congress shifted the burden of proof from the government to the defendant. Each of the changes contained in the Bail Reform Act of 1984 makes it considerably more difficult for a defendant to be released on bail pending appeal. Viewing the changes as a whole, we have no doubt that Congress succeeded in accomplishing its basic purpose of tightening the standards for bail pending appeal. Accordingly, we see no need to define "substantial question" in a manner contrary to that in which it has always previously been defined, even assuming we would have the authority to do so.

■ We conclude that a "substantial question" is one that is "fairly debatable," *D'Aquino v. United States*, 180 F.2d at 272; *accord Barefoot v. Estelle*, 103 S.Ct. at 3394 n. 4, or "fairly doubtful," *United States v. Miller*, 753 F.2d at 23. "In short, a 'substantial question' is one of more substance than would be necessary to a finding that it was not frivolous." *United States v. Giancola*, 754 F.2d at 901; *accord Barefoot v. Estelle*, 103 S.Ct. at 3394; *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir.1977).

To summarize, we adopt the interpretation of the 1984 Bail Act first set forth by the Third Circuit in *Miller*. As both the Third and Eleventh Circuits have stated, under the 1984 Bail Act a court must find the following to grant bail pending appeal:

(1) that the defendant is not likely to flee or pose a danger to the safety of any other person in the community if released;

(2) that the appeal is not for purpose of delay;

(3) that the appeal raises a substantial question of law or fact; and

(4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

*Giancola*, 754 F.2d at 901; *Miller*, 753 F.2d at 24.

The government does not challenge the district court's application of the law to the facts and does not argue that Handy fails to present a "substantial question" as that term was defined by the district court. The government's argument in this case goes solely to the legal meaning of the terms and phrases employed in the statute. In determining that the suppression question was "substantial," the district court applied, essentially, the traditional test we have described above. We therefore conclude that in applying that term the district court used the proper legal standard.

The district court found that Handy is not likely to flee or pose a danger to any person in the community if released and that the appeal is not for the purpose of delay. The government does not challenge these findings. Finally, it is clear that if the substantial question is determined favorably to Handy on appeal, that decision will likely result in an order for a new trial. The government does not even suggest that if the district court's ruling on the fourth amendment issue is found to be in error, the error would be harmless; the conviction after the trial on stipulated facts could not be affirmed if the evidence that

formed the basis for the most crucial stipulation was illegally obtained.

CONCLUSION

██ In response to Handy's motion for bail pending appeal, the government contends that the district court correctly determined that it was without authority to grant bail unless it could conclude that its decision would likely be reversed. For all of the reasons we have set forth, we disagree. Since the government questions only the legal meaning of the statutory terms and phrases, since the district court applied the proper legal test in determining that a substantial question exists, since we find that the question presented is such that if error is found reversal is likely, and since there is no dispute that appellant meets the other conditions of eligibility for bail we remand to the district court for imposition of appropriate conditions of release in accordance with the provisions of 18 U.S.C. § 3142(c) (1982).

REVERSED AND REMANDED.

FARRIS, Circuit Judge, dissenting:

I respectfully dissent from the majority's definition of "substantial question" as one that is merely "fairly doubtful" or "fairly debatable." I would instead adopt the Eleventh Circuit's statement that a "substantial question" is "a 'close' question or one that very well could be decided the other way." *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir.1985).

When Congress enacted the District of Columbia Code provision on which the 1984 Bail Reform Act was later modeled, Congress intended release on bail pending appeal to be limited to "exceptional circumstances." H.R.Rep. No. 907, 91st Cong., 2d Sess. 186 (1970), quoted in *United States v. Miller*, 753 F.2d 19, 22 (3d Cir. 1985). This presumption against bail pending appeal was based on the fact that 1) the defendant's conviction "is presumably correct in law"; 2) the sentencing judge has already made a determination that the defendant is dangerous to the person or property of others; 3) release after a conviction "destroys whatever deterrent effect re-

mains in the criminal law"; and 4) release pending appeal was not meant to be used as an opportunity to demonstrate a basis for reducing a sentence after the conviction has been affirmed. H.R.Rep. No. 907 at 186–87. A "close question" standard would further the presumption against bail and restrict bail pending appeal to the extent Congress intended.

The cases cited by the majority in support of its definition of "substantial question" are inapplicable because they rely on a presumption in favor of bail—"the presumption that the [Senate Judiciary] Committee wishe[d] to eliminate in section 3143." S.Rep. No. 225, 98th Cong., 1st Sess. at 26 (1983), *reprinted in* 1984 U.S. Code Cong. & Ad.News 3182, 3209. For example, the majority quotes extensively from *D'Aquino v. United States*, 180 F.2d 271 (9th Cir.1950) (Douglas, Circuit Justice), and borrows from it the definition of a "substantial question" as one that is "fairly debatable." But *D'Aquino* proceeds from the premise that "[i]t has long been a principle of federal law that bail after conviction and pending appeal is a remedy normally available to a prisoner." *Id.* at 272. That view is now invalid in light of Congress' stated intent that bail pending appeal should be available only under "exceptional circumstances," and that there is a "presumption of detention" pending appeal. Because *D'Aquino* relies on an obsolete presumption against detention in reaching its conclusion that a "substantial question" is one that is "plainly not frivolous," *id.*, and Congress has clearly indicated its intention that the new standard is to be higher than "nonfrivolous," it is inappropriate to rely on *D'Aquino* to interpret the 1984 Bail Reform Act. Similarly, the majority's reliance on *Herzog v. United States*, 75 S.Ct. 349, 99 L.Ed. 1299 (1955) (Douglas, Circuit Justice), is misplaced because *Herzog* was based on the premise that "[d]oubts whether [bail pending appeal] should be granted or denied should always be resolved in favor of the defendant." *Id.* at 351.

Finally, while the majority places reliance on the more recent formulation of "substantial question" set out in *Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983), that case and the authority it in turn relied on were decided in the context of a habeas proceeding, where "doubts should be resolved in favor of the petitioner." *Gordon v. Willis*, 516 F.Supp. 911, 912 (N.D.Ga.1980), cited in *Barefoot*, 103 S.Ct. at 3394 n. 4. Again, the presumption in the cases on which the majority relies—including *Gardner v. Pogue*, 558 F.2d 548 (9th Cir.1977)—is exactly the opposite under the 1984 Bail Reform Act.

The majority notes that prior to 1956, "substantial question" was defined as "fairly debatable" or "fairly doubtful." The term "substantial question" was dropped when the statutory standard for bail was eased in 1966, but the term re-emerged in 1984. The majority's argument turns on the crucial inference that when Congress re-employed the term "substantial question" in 1984, it also intended to reintroduce the pre-1956 interpretations of that term.

This would be an entirely reasonable reading of legislative intent, if it were not for the fact that the 1984 Act was undisputably intended to place sharp restrictions on the availability of bail pending appeal. To adopt wholesale the pre-1956 interpretations of substantial question as "fairly debatable" would thwart Congress' manifest intention to restrict bail.

The majority addresses this objection by arguing that Congress was able to restrict the availability of bail through *other* measures in the Act—by adding the requirement that a question be of a type "likely to result in reversal," and shifting the burden of proof to the defendant—and that these measures alone were sufficient to accomplish Congress' basic purpose of tightening the availability of bail. However, questions raised on appeal nearly always are of a type "likely to result in reversal." Therefore, the only hurdle that a defendant must realistically overcome is to carry his burden of showing that a "fairly debatable" question exists. This hurdle, in my opinion, would not restrict bail pending appeal to "exceptional circumstances" as Congress intended. *See* H.R.Rep. No. 907, 91st Cong., 2d Sess. 186 (1970).

I therefore would adopt the approach of the Eleventh Circuit, which not only recognizes that a "'substantial question' is one of more substance than would be necessary to a finding that it was not frivolous," *Giancola*, 754 F.2d at 901, but must further be "a 'close' question or one that very well could be decided the other way." *Id.* Accordingly, I would not affirm the district court's use of a "fairly debatable" standard, but would reverse and remand to permit the district court to determine whether Handy has presented a "close" question. The district court could then grant or deny bail accordingly.