UNITED STATES of America, Plaintiff,

v.

Nancy Andre HICKS, Defendant.

No. 83–997–Cr–Spellman.

United States District Court,
S.D. Florida,
Miami Division.

May 23, 1985.

Robert Bondi, Asst. U.S. Atty., Miami, Fla., for plaintiff.

Michael Gelety, Fort Lauderdale, Fla., for defendant.

## SECOND CORRECTED MEMORANDUM OPINION AND ORDER GRANTING BOND PENDING APPEAL

SPELLMAN, District Judge.

Following a jury trial, the Defendant, Nancy Andre Hicks, was convicted of importation of cocaine, in violation of 21 U.S.C. § 952(a), conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). On March 29, 1985, this Court sentenced the Defendant to a total term of imprisonment of six (6) years, a ten (10) year special parole term, and a total fine of $45,000. The Court also immediately remanded the Defendant to the custody of the Attorney General.

The Defendant has filed an application with this Court requesting that she be permitted to remain on bond pending the appeal of her convictions. For the following reasons, the Defendant's application for bond pending appeal is GRANTED.

### I.

The 1984 Bail Reform Act, 18 U.S.C. § 3143, which controls the issue of bond pending appeal, provides in pertinent part:

(b) RELEASE OR DETENTION PENDING APPEAL BY THE DEFENDANT

The judicial officer ... shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for writ of certiorari, be detained, unless the judicial officer finds—

(1) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any person or the community if released ... and

(2) that the appeal is not for purposes for delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial.

It the judicial officer makes such findings, he shall order the release of the person in accordance with the provisions of sections 3142(b) or (c).

In the present case, a United States Magistrate conducted a hearing and made specific findings that the Defendant was not likely to flee. These findings are borne out by the fact that the Defendant was released on bond over the course of the proceedings in this matter (a period of several years), was permitted to leave the jurisdiction, even after conviction, and appeared at sentencing when she faced a possible sentence of forty-five years. There is no contention that the Defendant is a danger to any person or to the community. The only factor in dispute is whether the Defendant's appeal of her convictions will raise a "substantial question of law or fact [which if acted upon favorably will] likely ... result in reversal or an order for a new trial."

In fact, the issue presented to this Court is even more narrow for the Government has conceded, for purposes of this motion only, that if the appellate court should find that there was error at trial, the Defendant's conviction would be reversed. Thus, the only issue this Court need decide is whether the Defendant's appeal will raise a "substantial question" within the meaning of the Bail Reform Act of 1984.[1]

## II.

The Defendant's primary appellate argument concerns the admissibility of certain incriminating statements the Defendant made to a fellow inmate while she was in custody shortly after her arrest. The Defendant contends that the admission of these statements violated her sixth amendment right to counsel. *See Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1977).

The Defendant was arrested by the United States Customs Service on October 28, 1981. At the time of her arrest she indicated that she did not want to talk to federal agents without the presence of her attorney. That same day, the Defendant was incarcerated at the Dade County Jail, Women's Annex. On October 29, 1981, a woman named Marilyn Armstrong West was also incarcerated at the Dade County Jail, after she had surrendered herself before a United States Magistrate on a bond revocation matter.

While both women were in custody, they conversed. The Defendant made several incriminating statements which West later reported to federal authorities.

Prior to trial, the Defendant filed a motion to suppress West's testimony on the grounds that West's conversation with the Defendant constituted a surreptitious interrogation and that admission of the statements would violate the Defendant's sixth amendment right to counsel. This Court held two lengthy evidentiary hearings on this matter and reviewed numerous memoranda of law filed by the parties. In a written Order dated July 16, 1984, this Court found that although West had been an informant for federal law enforcement authorities, she had not been directed by

---

1. This Court has not attempted to separately analyze whether the Defendant is pursuing the appeal of her conviction "for purposes of delay." Because this Court finds that a substantial question is present here, the Court will assume that the defendant is pursuing the appeal not for delay but in order to obtain a reversal of her conviction.

those authorities to converse with the Defendant at the Dade County Jail. The Court further found that the federal officers with whom West had cooperated in the past did not even know of her incarceration or of her conversation with the Defendant until several days after the conversation occurred and that West had not been rewarded for providing information about the Defendant.

Based upon these factual premises, this Court held that West was a "neutral inmate" and there would be no sixth amendment violation if she were to testify as to the statements made by the Defendant.

West testified at trial and told the jury about incriminating statements made by the Defendant to West.

### III.

As Justice Douglas noted in *Herzog v. United States*, 75 S.Ct. 349, 350, 99 L.Ed. 1299 (1955), "[t]he construction of the words 'substantial question' is itself a substantial question." While it is clear that this Court must look into the nature of the appeal to make a determination that there is a "substantial question," it is also clear that it is not the role of this Court to substitute itself for the appellate court in deciding the ultimate merits of the appeal. In order to obtain bond, a defendant is not required to convince a trial court that it committed reversible error.

**2.** The court in *Giancola,* however, noted that the lack of controlling precedent does not necessarily mean that the issue is substantial. According to the court, "an issue may be without controlling precedent largely because the issue is so patently without merit that it has not been found necessary for it to be resolved.... Similarly, there might be no precedent in this circuit, but there may also be no real reason to believe that this circuit would depart from unanimous resolution of the issue by other circuits." 754 F.2d at 901. As explained in Section IV, *infra,* the reason there is no controlling precedent here is not necessarily because the issue raised by the Defendant is lacking in merit, but because the lower federal courts have only begun to define when a citizen-informant can be considered a government agent.

**3.** The Eighth Circuit, sitting *en banc,* has recently taken a more stringent view of what can be

Thus, in determining whether there is a substantial question, a court must keep in mind that it is not being asked to reverse its position on issues decided at trial, nor is it being asked to grant a new trial. It must decide only that a significant issue exists that merits appellate review and that the issue is critical enough to the defendant's conviction that a contrary appellate ruling would warrant a reversal. *See United States v. Miller*, 753 F.2d 19, 23 (3d Cir.1985); *accord United States v. Giancola*, 754 F.2d 898, 900 (11th Cir.1985) (per curiam); *United States v. Handy*, 761 F.2d 1279, 1489 (9th Cir.1985) (per curiam).

In *Giancola*, the Eleventh Circuit, agreeing with the interpretation offered by the Third Circuit, noted that a substantial question was " 'one which is either novel, ... has not been decided by controlling precedent, or ... is fairly doubtful.' " 754 F.2d at 900 (quoting *Miller*, 753 F.2d at 23).[2] The Eleventh Circuit found that a "substantial question" must be "of more substance than would be necessary to a finding that it was not frivolous." *Id.* at 901. It is "one that very well could be decided the other way." *Id.* Further, the court observed that "there are no blanket categories for what questions do or do not constitute 'substantial' ones" and that the determination of what is "substantial" therefore must be done on a "case-by-case basis." *Id.*[3]

considered a "substantial question" under the Bail Reform Act of 1984. *See United States v. Powell*, 761 F.2d 1227 (8th Cir.1985) (*en banc*). The Eighth Circuit explicitly rejected the definition of "substantial question" articulated by the Third Circuit in *Miller* and the Ninth Circuit's definition in *Handy*. *Miller* defined a substantial question as a "significant question at issue which is either novel, which has not been decided by controlling precedent or which is fairly doubtful." 753 F.2d at 23. *Handy* defined a substantial question as one that is "fairly debatable." 753 F.2d at 1490. The Eighth Circuit found that the *Miller* and *Handy* formulations "would not work much of a change in prior law." 761 F.2d at 1232. Relying upon language in *Giancola*, the Eighth Circuit defined a "substantial question" as a "close question or one that very well could be decided the other way." *Id.* at 1231 (quoting *Giancola*, 754 F.2d at 901).

Although our experience with the Bail Reform Act of 1984 is necessarily limited, in determining whether a substantial question has been raised, the Court is further guided by the case law interpreting former Rule 46(a)(2) of the Federal Rules of Criminal Procedure which also required a finding that an appeal raised a "substantial question" before bond was permitted.[4] In finding that a substantial appellate question existed in *D'Aquino v. United States*, 180 F.2d 271, 272 (9th Cir.1950) (Douglas, Circuit Justice) the court explained:

> The question may be "substantial" even though the judge or justice hearing the application for bail would affirm on the merits of the appeal. The question may

be new or novel. It may present unique facts not plainly covered by the controlling precedents. It may involve important questions concerning the scope and meaning of decisions of the Supreme Court. The application of well-settled principles to the facts of the instant case may raise issues that are fairly debatable.

In that case, the defendant was raising the issue of the applicability of the principles enunciated in *McNabb v. United States*, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943) and *Upshaw v. United States*, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100 (1948) to confessions obtained following the prolonged confinement of the defendant by

---

This Court, however, is of the opinion that the Eighth Circuit has read *Giancola* too narrowly. *Giancola* did not reject the definition of "substantial question" articulated by the *Miller* court. In fact, the Eleventh Circuit expressly "adopt[ed] the Third Circuit's interpretation [of the Bail Reform Act of 1984]", 754 F.2d at 901, finding that "the Third Circuit's interpretation effectuates congressional intent." *Id.* at 900. The Eleventh Circuit's only qualification of *Miller*'s definition was its "observation" that the lack of controlling precedent does not necessarily mean that the question is substantial. *Id.* at 901. This cannot, in this Court's view, be considered an implicit rejection of *Miller*. Instead, this Court finds that the Eleventh Circuit's conclusion that a "substantial question" is one that "very well could be decided the other way," *id.*, merely underscores its previous finding that the appellate issue have "more substance than would be necessary to a finding that it was not frivolous." *Id.*

Additionally, this Court believes that the Eighth Circuit was inaccurate in its criticism of *Handy*'s definition of "substantial question." According to the Eighth Circuit, the Ninth Circuit in *Handy* relied on authorities that "reflect the previous view ... that bail is the rule rather than the exception, to be granted whenever a nonfrivolous question is raised." 761 F.2d at 1232. The Eighth Circuit is incorrect.

In defining a "substantial question" as one that is "fairly debatable," *Handy* was guided by cases interpreting the "substantial question" requirement of former Rule 46(a)(2) of the Federal Rules of Criminal Procedure. *See* 753 F.2d at 1489–90 (citing *Herzog v. United States*, 75 S.Ct. 349, 99 L.Ed. 1299 (1955) and *D'Aquino v. United States*, 180 F.2d 271 (9th Cir.1950). This Court was similarly aided by these cases. The United States Supreme Court, however, in 1956, believed the standard under Rule 46(a)(2) to be too stringent and thus amended the rule. The

amended rule "greatly liberalized" the requirements for bond pending appeal. *Ward v. United States*, 76 S.Ct. 1063, 1065, 1 L.Ed.2d 25 (1956) (Frankfurter, Circuit Justice). While the former rule required the defendant to establish that his appeal raised a "substantial question," the amended rule permitted bond unless the government demonstrated "that the appeal is frivolous or taken for delay." *Id.* at 1064 (citation omitted). As Justice Frankfurter explained, "[the non-frivolous standard] expresse[d] a general attitude ... that inasmuch as an appeal from a conviction is a matter of right, the risk of incarceration for a conviction that may be upset on appeal is normally to be guarded against by allowing bail unless the appeal is so baseless as to deserve to be condemned as 'frivolous' or is sought as a device for delay." *Id.* It was this standard—release if appeal is not "baseless" or "frivolous"—that was modified by the Bail Reform Act of 1984, which reimposed the "substantial question" requirement.

Thus, *Handy* did not rely on authorities reflecting the view that "bail is the rule rather than the exception, to be granted whenever a nonfrivolous question is raised." 761 F.2d at 1232. *Handy* looked to cases defining "substantial question"—a requirement reimposed by the Bail Reform Act of 1984.

4. Prior to its amendment is 1956, Rule 46(a)(2) of the Federal Rules of Criminal Procedure provided, in part:

   Bail may be allowed pending appeal or certiorari only if it appears that the case involves a substantial question which should be determined by the appellate court.

   Unlike the Bail Reform Act of 1984, there was no requirement that the substantial question would likely result in reversal or an order for a new trial.

military authorities. The court expressly stated that it was not suggesting that there had been an infraction of these principles in the case before it, but concluded nonetheless that the appeal raised a substantial question and granted the application for bail.

Similarly, in *Herzog*, the court found that in deciding whether a question is "substantial" it was not sufficient that one judge may not be impressed. 75 S.Ct. at 351. While this Court firmly believes that it was correct in its rulings and that the Defendant received a fair trial, it recognizes that the "West question" must be considered "substantial" within the meaning of the Bail Reform Act and that the Defendant should therefore be permitted to remain on bond pending the Eleventh Circuit's resolution of this issue.

### IV.

■ In *United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), the Supreme Court held that the intentional planting of an informant in a suspect's cell for the purpose of eliciting incriminatory statements violated the sixth amendment. The informant in that case was placed in close proximity to the defendant and was told "not to initiate" any conversations with the defendant but "to pay attention" to any incriminating statements he may make. *Id.* at 268, 100 S.Ct. at 2185.

Although the Court in *Henry* did not make it the focal point of its inquiry, it is plain that a sixth amendment violation would occur only when a citizen-informant who elicits incriminating information from an accused is acting as an agent of the government. In *Henry*, the actions of the inmate witness were clearly attributable to the government for he was acting as a paid informant under specific instructions to elicit information from the defendant in that case. But the principles enunciated in *Henry* are not necessarily limited to those situations in which a paid informant's assigned mission is specifically targeted on the accused. As the court observed in *Thomas v. Cox*, 708 F.2d 132, 136 (4th Cir.),

*cert. denied*, —— U.S. ——, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983), the point at which a citizen-informant may be considered a government agent may not be subject to a "bright-line" test.

For example, in *United States v. Sampol*, 636 F.2d 621, 638 (D.C.Cir.1980), the United States Court of Appeals for the District of Columbia Circuit found that an informant was a government agent for sixth amendment purposes even when the authorities had not specifically targeted the defendant for interrogation. In fact, in *Sampol*, when the informant undertook his informing project, the government authorities did not even know of his association with the defendant. The informant's actions were attributable to the government, however, because he had previously provided information in different cases and was told by a sentencing judge that he would receive a probationary sentence as long as he continued to "go all out" and to "forge ahead on [his] own" to gain information that would be helpful to the government. The individual departed the courtroom with the judicial fiat that he was an "informant-at-large without portfolio."

While it is obvious that this Court does not believe that the facts of this case approach those in *Massiah*, *Henry*, or *Sampol*, this does not detract from the substance of the issue presented here. The lower federal courts have only begun to define the parameters of when a citizen-informant can be considered a government agent. Although this Court found that West was a neutral inmate and her actions could not be attributable to the government when she spoke with the Defendant, the facts of this case are not "plainly covered by controlling precedent." *See D'Aquino*, 180 F.2d at 272. This appeal will therefore involve "important questions concerning the scope and meaning of [a] decision[ ] by the Supreme Court." *See id.* Notwithstanding this Court's opinion that no error was committed, the Defendant's appeal will raise a "substantial question." Accordingly, the application for bond pending appeal is GRANTED in the amount of one hun-

dred fifty thousand dollars· ($150,000) corporate surety.[5]

---

**5.** The effective date and time of this Order is stayed until 12 noon on May 29, 1985 to allow the Government, if it so desires, to seek any additional stay of this Order and a review of this Opinion and Order in the United States Court of Appeals for the Eleventh Circuit.