**UNITED STATES of America**

v.

**Robert H. VENERI.**

**No. Cr–85–256–08–WS.**

United States District Court, M.D. North Carolina, Winston-Salem Division.

May 15, 1986.

Douglas Cannon and Robert H. Edmunds, Jr., Asst. U.S. Attys., Greensboro, N.C., for U.S.

Robert B. Allen of the firm of King, Betts & Allen, Charleston, W. Va., and Fred R. Harwell, Jr. of the firm of Davis & Harwell, Winston-Salem, N.C., for Veneri.

### MEMORANDUM OPINION AND ORDER

HIRAM H. WARD, Chief Judge.

This matter comes before the Court on defendant Robert H. Veneri's Motion for Release from Detention Pending Appeal (May 5, 1986) pursuant to 18 U.S.C. § 3143. The United States has responded and urges the Court to deny this motion. The Court will deny this motion as the defendant has not shown that his appeal raises any "substantial question" in law or fact likely to result in reversal or an order for a new trial.

The defendant was found guilty by a jury of: conspiracy to commit mail fraud; six counts of mail fraud; eight counts of aiding and abetting odometer tampering; and a count of aiding and abetting the completion of false odometer certifications. On April 24, 1986, the defendant was sentenced to six years imprisonment and a fine of Twenty Six Thousand ($26,000.00) Dol-

1. This determination is of course appealable under *Daniels* and *Patzer.*

lars was imposed with respect to various counts for which he was convicted.

The Comprehensive Crime Control Act of 1984 changed the standard for release of a convicted defendant pending appeal. In effect, Congress made clear its purpose to reverse the presumption favoring bail. S.Rep. No. 225, 98th Cong., 1st Sess. at 26 (1983), *reprinted in* 1984 U.S.Code Cong. & Ad.News 1, 29 (Supp. 9A). In order for a defendant found guilty of an offense and sentenced to a term of imprisonment to be released on bail pending appeal, the *defendant must show:*

> (1) by clear and convincing evidence that the person is not *likely* to flee or pose a danger to the safety of the community[1]; *and*
>
> (2) that the defendant's appeal is not for the purpose of delay and raises a substantial question of law or fact *likely* to result in reversal or an order for a new trial.

18 U.S.C. § 3143(b)(1) and (2) (emphasis added). Under a literal reading of the statute, bail pending appeal would be very rare. A trial judge who believes it is probable that he has committed reversible error will in most cases order a new trial without delay. Judges do not knowingly leave substantial errors uncorrected.

A broader, less literal, interpretation of 18 U.S.C. § 3143(b)(2) has been advanced by the Third Circuit. This interpretation releases a judge from finding that his own ruling in the case will result in reversal in order to grant bail on appeal. The Third Circuit finds that Congress intended that a defendant seeking bail on appeal carry the burden of showing that if the *substantial* question is determined favorably to him on appeal, the decision is *likely* to result in reversal or a new trial. *United States v. Miller,* 753 F.2d 19, 23 (3d Cir.1985); *United States v. Giancola,* 754 F.2d 898 (11th Cir.1985).[2]

Under this interpretation, after first making the findings as to flight, danger, and delay, a court must determine that the question on appeal is a "substantial one," *i.e.,* it must find a significant question at issue which is either novel, which has not been decided by controlling precedent, or which is fairly doubtful. *Id.* A substantial issue on appeal presents "a close question or one that could go either way." *United States v. Powell,* 761 F.2d 1227, 1233–34 (8th Cir.1985) (en banc). After finding that the appeal meets the "substantial" test, the Court must determine whether that issue is sufficiently important to the merits that a contrary appellate ruling is likely to require reversal or a new trial. *United States v. Miller,* 753 F.2d at 23. *See also United States v. Pollard,* 778 F.2d 1177, 1182 (6th Cir.1985).

The Third Circuit's test provides an interpretation of Congress' language that does not require a district court to certify its own error or predict the probability of reversal. With some refinement the Eleventh, Seventh, Second, Fifth, Sixth, Eighth, and Tenth have followed *Miller.* The Eleventh Circuit in *United States v. Giancola,* after adopting the analysis and result of *Miller* stated: "the Third Circuit's interpretation effectuates congressional intent." 754 F.2d at 900.

The defendant in this case fails to meet the *Miller* standard for bail pending appeal. Defendant raises, in a cursory manner, three issues which he contends are "substantial issues" and so integral to the merits of the conviction that it is likely that a new trial will occur if the questions are decided in his favor. The Court will address each issue and its failure to meet the standard.

The defendant first argues that the indictment charges multiple conspiracies in violation of defendant's rights. The Court interprets this as an argument that a vari-

---

**1.** There is no issue in this case of the defendant satisfying this standard.

**2.** *Giancola* pointed out "that an issue may be without controlling precedent largely because

that issue is so patently without merit that it has not been found necessary for it to have been resolved." *United States v. Giancola,* 754 F.2d at 901.

ance existed between the proof presented at trial and the indictment in violation of the principles established in *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). The indictment does not charge multiple conspiracies but instead charges one overall conspiracy which centered around used car dealers in Mount Airy who, under the direction, supervision and financial support of Bobby A. Slate, caused odometers to be rolled back on numerous automobiles and then to be sold for profit. The various title washers involved, including the defendant, were an integral part of the ongoing conspiracy and essential to accomplish its purposes and objects.[3] The core members of the conspiracy and the basic operation remained the same. *See United States v. Dorta,* 783 F.2d 1179 (4th Cir.1986).

The evidence presented at trial proved the same broad conspiracy alleged in the indictment. Certainly not every member of the conspiracy knew one another or worked together on every transaction. However, in a complex enterprise such as in this case, separate functions are dictated by the nature of the enterprise. *See United States v. Elam,* 678 F.2d 1234 (5th Cir.1982). The indictment charged a single conspiracy and ample evidence showing the interrelationships among the defendants and others, joint activities, and similar methods of operation supported the jury's finding of a single conspiracy.[4]

The defendant next contends that documents were admitted into evidence without proper authentication. This argument borders on the frivolous. The documents admitted complied with the requirements of the Federal Rules of Evidence, notably Rules 901 and 902. Defendant points to no specific documents or type of document in its motion but simply argues that inadmissible documents were admitted.

Defendant's last argument is troubling, not because of its merit but, because the defendant would attempt to raise it. Defendant alleges that prosecutorial misconduct resulted because of the United States Attorney's interruption of defense counsel during defense counsel's closing argument. Defendant claims that the United States Attorney's brief interruption made defense counsel look deceptive to the jury.

The prosecution's remark was in effect a reaction to defense counsel's obvious misleading of the jury. Defense counsel repeatedly stated that he wished, desired, and wanted the jury to take a summary chart back to the jury room because it clearly proved his client's innocence. Defense counsel's argument attempted to hurl the accusation that the Government was trying to withhold exculpatory matter from the jury. These statements were either deliberate misrepresentations or represented a sudden and dramatic change of heart as only hours before defense counsel conveyed its objection to the admission of the chart to the Government. The Government informed the Court of defense counsel's objections and because of these objections decided not to offer the chart into evidence. After closing arguments, but before the jury charge, defense counsel again expressed his objections to the chart's introduction as evidence, either by stipulation or otherwise.

The prosecution's remark that the Government did not object to introducing the chart, was unfortunate only because it interrupted defense counsel's argument. It was a truthful statement that would have been appropriate for rebuttal argument. In any event, the Court instructed the jury that neither the Government nor defense counsel had offered the chart into evidence and that it would not be sent back to the jury room during their deliberations. The prosecutor's brief remark was not prej-

---

**3.** The conspiracy involved used the United States mails to facilitate the scheme.

**4.** The Court would note that no evidence of the defendant's withdrawal was shown. West Virginia law changed to require odometer statements to be placed on titles, this effectively

dried up defendant's title washing business. However, if West Virginia had erased the requirement of odometer readings defendant would likely have geared up his title washing business once again.

udicial to the defendant. Any appearance of deceptiveness in the jury's eyes concerning defense counsel was his own doing and not caused by the Government.

The superficial arguments raised in defendant's motion fail to meet the standard for bail pending appeal articulated in *Miller* and subsequent cases. The defendant has shown no substantial question that he will raise on appeal. Defendant has advanced no issues that are novel, undecided, doubtful or close.

IT IS, THEREFORE, ORDERED that defendant Veneri's Motion for Release from Detention Pending Appeal be, and the same hereby is, DENIED.