**UNITED STATES of America**

v.

**Frank E. BUTLER, III and Owen R. Thornton.**

**Crim. No. 88–53–N.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Jan. 18, 1989.

See also 704 F.Supp. 1338.

Stanley Sacks, Andrew Sacks, Norfolk, Va., for Butler.

J. Brian Donnelly, Virginia Beach, Va., for Thornton.

Joseph A. Fisher, III, James A. Metcalfe, Justin W. Williams, Mark A. Adler, Rachel Ballow (third-year law student), U.S. Attys. Office, Norfolk, Va., for U.S.

## MEMORANDUM OPINION AND ORDER

CLARKE, District Judge.

This matter comes before the Court on each defendant's Motion for Release on Bail Pending Appeal pursuant to 18 U.S.C. § 3143(b). The defendants have filed Notices of Appeal of their convictions on numerous charges arising from their involvement in the affairs of Landbank Equity Corp., a now-defunct issuer and seller of mortgage-backed consumer loans. After an eight-week jury trial, the defendant Butler was convicted of thirty-five counts of wire fraud, nine counts of bankruptcy fraud, three counts of bank fraud and two counts involving Racketeering Influenced and Corrupt Organizations (RICO) substantive and conspiracy violations. The jury was unable to reach a verdict on one wire fraud count. The defendant Thornton was found guilty on twenty-one counts of wire fraud, one count of bank fraud, and the RICO substantive and conspiracy counts. The jury found him not guilty of one count of wire fraud and was unable to reach a verdict on nine counts of wire fraud and on one count of bankruptcy fraud.

The defendants were convicted on November 28, 1988 and sentenced on January 6, 1989. In addition to assessments and

restitution, Butler was sentenced to eight years imprisonment: two years on each wire fraud count, to run concurrently; two years on each bankruptcy count, to run concurrently with each other but consecutive to the wire fraud counts; two years on the RICO substantive count and one year on the RICO conspiracy count, each to run consecutively to the other counts; and one year each on the bank fraud counts, to run concurrently with each other but consecutive to the other counts. Thornton was sentenced, in addition to restitution and assessments, to six years imprisonment: two years on each of the wire fraud counts, to run concurrently; two years on the RICO substantive count and one year on the RICO conspiracy count, to run consecutive to each other and to the other counts; and one year on the bank fraud count, also to run consecutively.

The defendants have moved for release on bail pending appeal of their convictions. This Court's only authority to grant bail pending appeal is contained in the Bail Reform Act of 1984; the relevant provision is 18 U.S.C. § 3143(b) which provides

> The judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—
>
> (1) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> (2) that the appeal is not for purpose of delay and raises a substantial question of law or fact likely to result in reversal, an order for a new trial, or a sentence that does not include a term of imprisonment.

The Act eliminates the former presumption in favor of bail after conviction and creates a presumption against post-conviction release pending appeal. *United States v. Farran*, 611 F.Supp. 602 (S.D.Tex.1985), *aff'd*, 784 F.2d 1111 (5th Cir.), *cert. denied*, 476 U.S. 1144, 106 S.Ct. 2256, 90 L.Ed.2d 701 (1986). The burden of proof is on the defendant to prove by a preponderance of the evidence all of the requirements of Section 3143. *United States v. Affleck*, 765 F.2d 944, 953 n. 15 (10th Cir.1985) (en banc). If the defendant fails to establish all the elements of Section 3143, the Court has no authority to release him. *United States v. Thompson*, 787 F.2d 1084 (7th Cir.1986).

In this case, the government has conceded that Butler and Thornton, both professional men with significant ties to the community, are not likely to flee or to pose a danger to any other person or the community. In addition, although the Court is not entirely convinced that these appeals are not for purposes of delay, the Court will for purposes of these Motions assume that they are not.

The key question, then, is whether either defendant's proposed appeal "raises a substantial question of law or fact likely to result in reversal [or] an order for a new trial." What is a "substantial question" has been variously defined as one that is fairly debatable or fairly doubtful, *United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir.1985); one that is a "close" question that very well could be decided either way, *United States v. Bayko*, 774 F.2d 516, 523 (1st Cir.1985); and as one which is novel, has not been decided by controlling precedent or is fairly doubtful. *United States v. Miller*, 753 F.2d 19, 23 (3d Cir.1985). The trial court is not required to find that it committed reversible error, but merely to determine that there exists a significant issue that merits appellate review. *Id.; United States v. Hicks*, 611 F.Supp. 497, 499 (S.D.Fla.1985).

In the case of a conviction on multiple counts, the defendant must raise a substantial question with respect to all counts for which imprisonment is imposed. *Morison v. United States*, —— U.S. ——, 108 S.Ct. 1837, 100 L.Ed.2d 594 (Rehnquist, Circuit Justice 1988); *United States v. Randell*, 761 F.2d 122, 125–26 (2d Cir.), *cert. denied*, 474 U.S. 1008, 106 S.Ct. 533, 88 L.Ed.2d 464 (1985).

The defendant must also establish that a favorable decision on the substantial issue

would be likely to result in a reversal or order for a new trial. This element is concerned not with the likelihood that the defendant will prevail on the issue but with the likelihood that a favorable decision will result in a reversal of the conviction or a new trial. Reversal or a new trial is "likely" if the question is "so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction." *United States v. Miller*, 753 F.2d at 23.

This view of the statute, first enunciated by the Third Circuit in *Miller*, has been widely accepted by the circuits that have considered Section 3143(b). *See, e.g., United States v. Bavko*, 774 F.2d 516 (1st Cir. 1985); *United States v. Valera–Elizondo*, 761 F.2d 1020 (5th Cir.1985); *United States v. Handy*, 761 F.2d 1279 (9th Cir.1985); *United States v. Powell*, 761 F.2d 1227 (8th Cir.1985). The Fourth Circuit has tacitly approved the *Miller* analysis, affirming without opinion a trial court decision relying on *Miller*. *See United States v. Veneri*, 635 F.Supp. 1259 (M.D.N.C.1986), *aff'd*, 813 F.2d 1229 (4th Cir.1987).

The defendants cite no substantial questions of fact but raise a number of legal issues that they assert meet the requirements of Section 3143(b).

Butler raises a number of questions regarding evidence in the case. First, he asserts that there was insufficient evidence of his participation in any scheme to defraud. He challenges the admission of evidence relating to the gambling activities of a codefendant who was not at trial, the testimony of representatives of investor banks regarding the amount of their losses and a letter from an accounting firm to Landbank officials warning of possible criminal violations at Landbank, asserting as to each that the probative value of the evidence is outweighed by the prejudice to the defendant. He also asserts that certain evidence was admitted that was irrelevant, lacked a proper foundation or was otherwise deficient, including a document designated as minutes of a Landbank Board of Directors meeting, flow charts with an ar-

row from Butler's law firm to the investor banks, testimony by former U.S. Attorney and now U.S. Magistrate Tommy Miller regarding contacts with Butler's attorney during the investigation, and allegedly speculative testimony of government witnesses concerning Butler's knowledge of various Landbank activities. The Court finds that none of these issues raise a substantial question, and notes that a review of the case law demonstrates that questions of the sufficiency or admissibility of evidence are rarely considered to be "substantial" for purposes of the statute. *See, e.g., United States v. Powell*, 761 F.2d 1227 (8th Cir.); *United States v. Gorman*, 674 F.Supp. 1401 (D.Minn.1987); *United States v. Farran*, 611 F.Supp. 602, *aff'd*, 784 F.2d 1111 (5th Cir.), *cert. denied*, 476 U.S. 1144, 106 S.Ct. 2256, 90 L.Ed.2d 701 (1986); *United States v. Colletta*, 602 F.Supp. 1322 (E.D.Pa.), *aff'd*, 770 F.2d 1076 (3d Cir.1985).

Butler raises four additional legal questions. First, he argues that the Court erred in refusing to grant a mistrial after the suicide of codefendant Ross E. Schumann, Jr. Schumann was present during the voir dire and impaneling of the jury, but committed suicide the day before opening statements were to begin. After a four-day recess, during which the jurors were instructed not to read, hear or see anything regarding the case, the jurors were again subjected to voir dire. The Court, in the presence of all counsel and the remaining defendants, informed the jurors individually of the occurrence and questioned them carefully about the effect of Schumann's suicide on their views of the case. One juror, who expressed concerns about her ability to consider the guilt of the remaining defendants apart from Schumann's suicide, was excused from service.

The Court found at the time, based on the individual questioning of the jurors, that Schumann's suicide did not affect the jurors' impartiality and ability to consider each defendant individually. This conclusion is confirmed by the care which the jury took in its deliberations. Although Butler is correct that there is no case law directly on point, the Court's decision is

consistent with cases addressing analogous factual situations. *See, e.g., United States v. Gaggi*, 811 F.2d 47, 51–53 (2d Cir.), (involving murder of lead defendant two-and-a-half months into trial), *cert. denied*, —— U.S. ——, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987); *United States v. Payne*, 635 F.2d 643, 646 (7th Cir.1980) (involving guilty pleas by six codefendants during trial, leaving single defendant), *cert. denied*, 451 U.S. 972, 101 S.Ct. 2050, 68 L.Ed.2d 351 (1981); *United States v. Goodman*, 605 F.2d 870, 881–83 (5th Cir.1979) (involving refusal to disclose to jury suicide of codefendant during trial). Further, the Court notes that a trial court's decision not to declare a mistrial is reviewable only for abuse of discretion. *See, e.g., United States v. Alonzo*, 689 F.2d 1202 (4th Cir. 1982). This issue is not "substantial" within the meaning of Section 3143(b).

Butler next argues that the Court erred in failing to instruct the jury that a conviction on the wire fraud counts requires a finding that the defendant "contemplated harm" to the alleged victims. This view has been adopted by the Second Circuit only, *United States v. Starr*, 816 F.2d 94 (2d Cir.1987), and is in opposition to the rule in the majority of the Circuits. The Court does not agree that this situation represents so significant a split in the Circuits that the Fourth Circuit's eventual view is doubtful.

Further, the Court notes that this case differs on the facts from *Starr* and the case *Starr* relies upon, *United States v. Regent Office Supply Co.*, 421 F.2d 1174 (2d Cir.1970). In those cases, the alleged misrepresentations "were only collateral to the sale and did not concern the quality or nature of the goods being sold. The misrepresentations did not go to the basis of the customers' bargain.... The customers received exactly what they paid for and no customer testified that he had been cheated." *Starr*, 816 F.2d at 98. The Second Circuit held that the "contemplated harm" instruction was necessary to avoid a conviction for behavior that may have deceived the alleged victims but was not intended to, and did not, cause them harm. In this case, the misrepresentations went directly to the quality of the loans being sold, dozens of investors suffered significant losses, and *Starr* is inapposite. The Court does not consider this question to be substantial.

Butler next argues that the bankruptcy fraud counts are improper because the properties involved were not titled in the name of the debtor in bankruptcy, Landbank. The Court has previously determined that there was sufficient evidence to support the government's theory that the nominal owners were merely "alter egos" of Landbank and its principals and that Butler knew of this. Federal bankruptcy law looks to state law to define what interests belong to the debtor. *Steyr–Daimler–Puch of America Corp. v. Pappas*, 852 F.2d 132, 135 (4th Cir.1988). "Under Virginia law, a corporation has an equitable interest in the assets of an alter ego because the corporation and the alter ego are 'one and the same.'" *Id.* at 136. *See also In re Runnells*, 815 F.2d 969, 970 (upholding this Court's finding that certain entities were alter egos of Landbank's founder).

Finally, Butler argues that the bank fraud counts were improperly duplicious, as they alleged false statements to either of two institutions. These counts and the relevant jury instructions properly track the statute, *see* 18 U.S.C. § 1014, and this contention does not raise a substantial question.

In addition, none of the last three issues raise questions that would result in reversal of Butler's conviction on *all* counts.

The defendant Thornton raises in his written Motion several issues that he proposes to raise on appeal. He first challenges the failure to grant a mistrial after Schumann's suicide; this argument has already been addressed.

Thornton next asserts that the Court erred in admitting statements of Steven Runnells and questions made of Thornton's secretary by a prosecutor, arguing that this evidence would lead the jury to believe that Thornton "was or may be guilty of other criminal conduct not charged at the indictment." He states that the jury was "left hanging" with unresolved suspicions.

To resolve incomplete testimony and rebut the prosecution's allegations are among the purposes of cross-examination and re-direct. Thornton had adequate opportunity to go into these matters at trial, and the admission of this testimony does not raise a substantial question.

Thornton also asserts that the government failed to provide to defense counsel the contents of statements made to government investigators by witness Kate McGaughey that incriminated Thornton. At trial, government counsel represented to the Court that the particular statements in dispute had been conveyed verbally by the witness to a United States Attorney but were not embodied in any written statements. Thornton has not provided any reason to doubt this representation. The government properly complied with any agreement to provide counsel with written statements of witnesses. Further, government counsel stated that, before trial, he had discussed the incriminating nature of McGaughey's testimony with Thornton's counsel. This issue is not substantial and borders on the frivolous.

At oral argument, Thornton raised two additional proposed grounds for appeal. First, he challenges the jury instructions on the bank fraud counts, in which the Court stated that materiality was an issue for the Court to decide and that the alleged misrepresentations were material. He argues that this instruction impermissibly tainted the jury's deliberations on the wire fraud counts, in which the jury was required to make a finding of materiality. The instructions were proper statements of the law. Moreover, the jury verdict indicated that the jury was able to consider each count separately.

Finally, Thornton argues that the Court erred in its instructions to the jury when the jurors asked what they should do if they were unable to reach agreement on any particular count. The Court instructed the jury that it could not return a verdict on any count on which they could not unanimously agree and advised the jurors to determine what counts they could agree on. The jurors were particularly instructed not to force a verdict if they could not agree.

Thornton now suggests that, absent such an instruction, it is possible that the jury would have returned verdicts of not guilty. The Court was obliged to answer the jury's question, and the instruction was a proper statement of the law. Moreover, Thornton has failed to show how this instruction so prejudiced him as to require a reversal of his conviction on all counts.

Neither defendant has met the requirements of 18 U.S.C. § 3143(b) and, accordingly, neither is entitled to release on bail pending appeal. The Motions are DENIED.

The defendants also moved for an additional stay of their sentences and for leave to report directly to their assigned penal institution. The Court, in the exercise of its discretion and for the reasons stated from the bench, DENIED these Motions.

In accordance with defendants' request, the Court RECOMMENDS to the Bureau of Prisons that Butler and Thornton be incarcerated in a Level I facility, preferably the federal facility at Petersburg, Virginia.

IT IS SO ORDERED.