**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Grant C. AFFLECK,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Frank KOWALIK, Jr.,
Defendant-Appellant.**

**Nos. 85–1009, 84–2600.**

United States Court of Appeals,
Tenth Circuit.

May 24, 1985.

McKay, Circuit Judge, dissented and filed opinion, in which Seymour, Circuit Judge, joined, also filing a separate dissenting opinion.

Albert M. Pearson, University of Georgia School of Law, Athens, Ga., and Scott McLarty, Athens, Ga. (Cecil Hartman, Denver, Colo., with them on the brief), for defendant-appellant, Kowalik.

Thomas M. O'Rourke, Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., with him on the brief), for plaintiff-appellee U.S. in No. 84–2600.

Michael L. Bender, Bender & Treece, and Jay P.K. Kenney, Denver, Colo., were on the brief in 84–2600 for amicus curiae Nat. Ass'n of Criminal Defense Lawyers.

Before HOLLOWAY, Chief Judge, and SETH, BARRETT, DOYLE, McKAY, LOGAN, and SEYMOUR, Circuit Judges *.

HOLLOWAY, Chief Judge.

## OPINION ON REHEARING EN BANC

These separate appeals from the District of Utah and the District of Colorado present important questions under the Bail Reform Act of 1984 ("Act"), enacted as part of the Comprehensive Crime Control Act of 1984, Title II of Pub.L. No. 98–473, 98 Stat. 1976, approved October 12, 1984. This court ordered rehearings en banc which were heard on March 12, 1985 in each case. This opinion disposes of the issues in both cases concerning bail pending appeal.

### I

#### Facts

#### A. Affleck

Defendant Grant C. Affleck was convicted in the District of Utah on October 5, 1984 after a jury trial of six counts of security fraud,[1] one count of bankruptcy fraud,[2] and one count of interstate transportation of a person to defraud.[3] On that date, the district court ordered Affleck re-

A. Brent Carruth, Carruth & Goodwin, Van Nuys, Cal. (Eric A. Goodwin, Carruth & Goodwin, Van Nuys, Cal., with him on the briefs), for defendant-appellant Affleck.

Brent D. Ward, U.S. Atty., Salt Lake City, Utah (David Schwendiman, Sp. Asst. U.S. Atty., Salt Lake City, Utah, with him on the brief), for plaintiff-appellee U.S. in No. 85–1009.

---

* Senior Circuit Judges Seth and Doyle, as members of the panel which initially ruled on defendants' motions for release pending appeal, are participating in this en banc determination upon their election and designation. *See* 28 U.S.C. § 46(c).

1. 15 U.S.C. § 78j; 17 C.F.R. § 240–10b–5.

2. 18 U.S.C. §§ 152, 2.

3. 18 U.S.C. § 2314.

leased on a $75,000 bond pending sentencing. The district court found that Affleck did not pose a danger to others or to the community, and that he was not likely to flee.

On November 16, Affleck was sentenced to ten years' imprisonment and five years' probation. On November 19, Affleck filed a notice of appeal. On November 20 the district court, in response to Affleck's ex parte motion, stayed execution of the sentence upon filing of the same bond maintained by Affleck during the trial. The district court found that Affleck posed "no immediate threat of fleeing during appeal and no immediate danger to society during that period." VIII R. 1438–39.

On November 21, the Government filed a motion in the district court to reconsider its order staying execution of Affleck's sentence and ordering his release pending appeal, or in the alternative, to hold an expedited hearing and to make the findings to support such an order as required by 18 U.S.C. § 3143(b), as amended by the new Act. Section 203(a) of the Act changed the standards governing release of convicted defendants on bail pending appeal.

Under former 18 U.S.C. §§ 3146 and 3148, convicted defendants were entitled to release on bail pending appeal unless no one or more conditions of release would reasonably assure that they would not flee or pose a danger to any other person or to the community, or unless their appeal was frivolous or taken for purpose of delay. The burden was on the Government under the former law to show that the appeal was frivolous and was taken for purpose of delay; the defendant bore the burden of showing he would not flee and was not a danger to any person or the community. *See also* former Fed.R.App.P. 9(c). The Act changed the criteria for release on bail pending appeal and placed the burden on the convicted defendant to prove that he meets all the new criteria. Current 18 U.S.C. § 3143(b) provides as follows:

Release or Detention Pending Appeal by the Defendant.—The judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—

(1) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released pursuant to section 3142(b) or (c); *and*

(2) that the appeal is not for purpose of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial.

Act § 203(a), 98 Stat. 1981–82 (emphasis added); *see also* Fed.R.App.P. 9(c), as amended by Act § 210, 98 Stat. 1987.

Affleck principally argued below that he was entitled to bail pending appeal because the former law entitled him to that relief, and that application to him of the new Act would violate the *ex post facto* clause. After a hearing, the district court on December 11 vacated its earlier order. The court held that Affleck had established by clear and convincing evidence under § 3143(b)(1) that he was not likely to flee or pose a danger to the safety of any other person or to the community if he were released on a $75,000 bond pending appeal. The court also held that Affleck had established that his appeal was not taken for purpose of delay under § 3143(b)(2). The court denied bail, however, because Affleck did not establish that his appeal raised a substantial question of law or fact likely to result in reversal or an order for a new trial under § 3143(b)(2). VIII R. 1490. The court also held that application of the new criteria of § 3143(b) to deny Affleck bail pending appeal did not violate the *ex post facto* clause, even though he would have been entitled to bail under the law in effect when the offenses were committed and when the guilty verdicts were returned. *Id.* at 1491–95.

### B. Kowalik

Defendant Frank Kowalik, Jr. was convicted in the District of Colorado on September 19, 1984 after a jury trial of two

counts of willfully failing to file federal income tax returns in violation of I.R.C. § 7203. On November 14 the district court sentenced Kowalik to one year of imprisonment and a $10,000 fine on each count. The district court on that date also ordered Kowalik's release pending appeal upon filing of a $20,000 bond. The court found that Kowalik did not pose a danger to the community and was not likely to flee. I R. 123.

Also on November 14 Kowalik filed a notice of appeal and sought release on the appeal bond, but the magistrate concluded that release was inappropriate absent findings by the district court under § 3143(b). Kowalik principally argued that he was entitled to bail pending appeal under the former law. He also contended that he raised substantial questions likely to result in reversal or an order for a new trial under the new Act. He argued that the trial court erred in its instructions because they did not properly treat his defenses of not willfully and knowingly intending a violation of the tax law, and that the instructions did not properly cover the effect of evidence from his character witnesses. After a hearing on November 15, the district court vacated its earlier order permitting Kowalik to be released on bail pending appeal. The court found that Kowalik had established by clear and convincing evidence under § 3143(b)(2) that he was not a threat to any other person or to the community and was not likely to flee. IX R. 4–5. However, the court held that Kowalik's appeal did not raise a substantial question of law or fact likely to result in reversal or an order for a new trial under § 3143(b)(2), and denied bail. *Id.* at 3.

### C. Proceedings in this court

Both Affleck and Kowalik challenge the district courts' denial of their motions for release pending appeal. A panel of this court denied the motions for release pend-

ing appeal.[4] On its own motion this court, by order of a majority of its active circuit judges on February 1, 1985, granted rehearing en banc of of the court's earlier orders denying the motions for release pending appeal.[5] We expedited these cases for argument at our March term of court and asked counsel to brief and argue the effect of the new § 3143(b) standards in these cases. We now address various issues concerning the application to these defendants of the new § 3143(b) criteria for release pending appeal.

## II

## Effective Date and the Ex Post Facto Clause

### A. Effective date

Affleck asserts that Congress did not intend the Bail Reform Act to apply to those convicted of crimes before October 12, 1984. He relies on cases holding that other provisions of the Bail Reform Act do not apply to defendants released on bail before that date. *See United States v. Fernandez-Toledo*, 749 F.2d 703 (11th Cir. 1985) (§ 3731, which permits the Government to appeal order granting bail); *United States v. Mitchell*, 600 F.Supp. 164 (N.D.Cal.1985) (§ 3142, which provides for pretrial detention). *But see United States v. Anguilo*, 755 F.2d 969, 970–74 (1st Cir.1985) (application of pretrial detention provisions of new Act to a defendant incarcerated and seeking release on October 12). Affleck also cites *Greene v. United States*, 376 U.S. 149, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964), and argues that criminal statutes like § 3143(b) should not be given retrospective operation where to do so would interfere with antecedent rights. *See also Fernandez-Toledo*, 749 F.2d at 705 (defendant released on bail prior to effective date of the Act had a vested, antecedent right to bail).

---

4. Kowalik's petition for a stay pending appeal was denied by order of a panel of this court on December 4, 1984. Affleck's motion for release pending appeal was denied by order of a panel of this court on December 27, 1984.

5. Chief Judge Holloway and Judge Barrett voted to deny rehearing en banc.

■ We are not persuaded by these cases that the Act should not apply to a defendant like Affleck, convicted before October 12, who seeks bail pending appeal after that date. There is no constitutional right to bail pending appeal. *See, e.g., United States v. Provenzano,* 602 F.Supp. 230, 232 (E.D.La.1985); *United States ex rel. Cameron v. New York,* 383 F.Supp. 182, 183 (E.D.N.Y.1974).[6] In these circumstances, we hold that § 3143(b), in the absence of a showing of congressional intent to the contrary, became fully effective on October 12 when the President approved the Act. Section 3143(b) therefore applies to Affleck even though he was convicted before the effective date of the Act. *See United States v. Cirrincione,* 600 F.Supp. 1436, 1438 (N.D.Ill.1985); *see also United States v. Chiattello,* 599 F.Supp. 970, 971–72 (N.D.Ind.1985); *United States v. Hazzard,* 598 F.Supp. 1442, 1454 n. 8 (N.D.Ill. 1984); *United States v. Kowal,* 596 F.Supp. 375, 376 (D.Conn.1984); *see also United States v. Gavrilovic,* 551 F.2d 1099, 1103 (8th Cir.1977); *United States v. Clizer,* 464 F.2d 121, 123 n. 2 (9th Cir.), *cert. denied,* 409 U.S. 1080, 93 S.Ct. 679, 34 L.Ed.2d 669 (1972).

## B. The ex post facto clause

■ Affleck and Kowalik both argue that application to them of the new § 3143(b)(2) standards governing bail pending appeal violates the *ex post facto* clause because they were convicted before the effective date of the Act. We disagree.

The Constitution provides that no "ex post facto [l]aw shall be passed." U.S. Const. art. I, § 9, cl. 3.[7] The *ex post facto* clauses forbid the enactment by Congress and the states of any law that "imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed; or changes the rules of evidence by which less or different testimony is sufficient to convict than was then required." *Cummings v. Missouri,* 71 U.S. (4 Wall.) 277, 325–26, 18 L.Ed. 356 (1867); *see also Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 963, 67 L.Ed.2d 17 (1981).[8]

The Court has stated that "no *ex post facto* violation occurs if the change effected is merely procedural, and does 'not increase the punishment[,] nor change the ingredients of the offen[c]e or the ultimate facts necessary to establish guilt.' " *Id.* at 29 n. 12, 101 S.Ct. at 964 n. 12 (quoting *Hopt v. Utah,* 110 U.S. 574, 590, 4 S.Ct. 202, 210, 28 L.Ed. 262 (1884) (brackets added to conform to original quotation in *Hopt*)); *see also Dobbert v. Florida,* 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977) ("Even though it may work to the disadvantage of a defendant, a procedural change is not *ex post facto.*"); *Beazell v. Ohio,* 269 U.S. 167, 171, 46 S.Ct. 68, 69, 70 L.Ed. 216 (1925) (*ex post facto* clause not intended to "limit the legislative control of remedies and modes of procedure which do not affect matters of substance"). The Court has held that "two critical elements must be present for a

---

**6.** The legislative history of the Bail Reform Act notes that "there is clearly no constitutional right to bail once a person has been convicted." S.Rep. No. 98–225, 98th Cong., 2d Sess. 26, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3209 (footnote omitted).

**7.** The Constitution also prohibits the states from passing *ex post facto* laws. U.S. Const. art. I, § 10, cl. 1 ("No State shall ... pass any ... ex post facto [l]aw....").

**8.** The Court has emphasized that "[t]he mark of an *ex post facto* law is the imposition of what can fairly be designated *punishment* for past acts." *De Veau v. Braisted,* 363 U.S. 144, 160, 80

S.Ct. 1146, 1154, 4 L.Ed.2d 1109 (1960) (plurality opinion) (emphasis added). *See also Beazell v. Ohio,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 68–69, 70 L.Ed. 216 (1925) ("[A]ny statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto.*"); *Paschal v. Wainwright,* 738 F.2d 1173, 1176 n. 4 (11th Cir.1984) (emphasis in original) (For *ex post facto* violation to have occurred, "the legislature must provide *punishment* for past conduct.").

criminal or penal law to be *ex post facto:* it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham,* 450 U.S. at 29, 101 S.Ct. at 964 (footnotes omitted).[9]

We hold that application of the new § 3143(b)(2) standards governing bail pending appeal to a defendant convicted before the effective date of the Act does not disadvantage the defendant in any way prohibited by the *ex post facto* clause. Section 3143(b)(2) represents a significant procedural change in the requirements that a convicted defendant must meet to obtain bail pending appeal, one seriously disadvantageous to him in that respect, but the statute does not change the "quantum of punishment attached to the crime." *Dobbert,* 432 U.S. at 294, 97 S.Ct. at 2298. We agree with other cases, which have similarly held that § 3143(b) does not violate the *ex post facto* clause. *See United States v. Powell,* 761 F.2d 1227, 1234 (8th Cir.1985) (en banc) (footnote omitted) ("Admission to bail pending appeal is, for Ex Post Facto Clause purposes, 'procedural.' It does not increase the punishment for a crime already committed, but simply regulates the time at which imprisonment for that crime will begin after conviction"); *United States v. Molt,* 758 F.2d 1198, 1200–01 (7th Cir.1985) ("We think the change in the standard for bail pending appeal is not an ex post facto law.... [T]he presumption is against construing a procedural change as an ex post facto law, and must carry the day in the absence of a stronger showing than made in this case that the change works an increase in punishment.... The change in the balance of advantages against the defendant is too slight to bring the change within the scope of the ex post facto clause."); *United States v. Miller,* 753 F.2d 19, 21 (3d Cir. 1985) ("The availability *vel non* of bail pending appeal, albeit extremely important to the individual involved, is a procedural issue rather than a type of punishment to

which the *Ex Post Facto* Clauses apply."); *United States v. Crabtree,* 754 F.2d 1200, 1201–02 (5th Cir.1985) (opinion of Chief Judge Clark as a single circuit judge) ("[ (Section 3143(a)(1) ] is merely procedural and does not alter a substantive right. [It] does not increase the punishment nor change the ingredients of the offense or the ultimate facts necessary to establish guilt."); *United States v. Chiattello,* 599 F.Supp. 970, 971 n. 1 (N.D.Ind.1985) ("The method governing the release of a defendant on appeal following a conviction is a matter of procedure and does not bear on substantive rights."); *United States v. Davis,* 598 F.Supp. 453, 468 (S.D.N.Y.1984) (on motion to revoke bail) ("[Defendant's] entitlement to bail, and the criteria by which that entitlement will be measured, constitute 'modes of procedure' falling outside the *ex post facto* rule, notwithstanding the fact that increased restrictions upon bail pending appeal may undoubtedly 'work to the disadvantage' of defendants.").

In reaching this conclusion, we are mindful of the Supreme Court's decision in *Kring v. Missouri,* 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1883). In *Kring,* the Court held that an *ex post facto* violation had occurred where the Missouri courts had imposed a death penalty by a second sentence in a murder case. A former plea of guilty to a second degree murder charge had resulted in a twenty-five year sentence; the defendant appealed and the judgment was reversed. Under Missouri law in force when the homicide was committed, the first sentence constituted an acquittal of first degree murder. Before retrial, the state law was changed so that this effect of an acquittal of first degree murder no longer operated. The defendant refused to withdraw his plea of guilty to second degree murder or to reenter a not guilty plea to the first degree murder charge. The trial court ordered a general not guilty plea entered to the first degree murder charge. The retrial, guilty verdict and death sentence followed, which the Missouri courts

---

**9.** *See also Paschal v. Wainwright,* 738 F.2d 1173, 1175–76 (11th Cir.1984); *Artez v. Mulcrone,* 673 F.2d 1169, 1171 (10th Cir.1982); *see generally* J.

Nowak, R. Rotunda & J. Young, *Constitutional Law* 477–78 (2d ed. 1983); L. Tribe *American Constitutional Law* 477–84 (1978).

affirmed. The Supreme Court reversed. The Court upheld the *ex post facto* claim and rejected the contention that the change in state law was merely a change in criminal procedure. *Id.* at 232–36, 2 S.Ct. at 452–55. The troublesome discussion is as follows:

But it cannot be sustained without destroying the value of the constitutional provision, that a law, however it may invade or modify the rights of a party charged with crime, is not an *ex post facto* law, if it comes within either of these comprehensive branches of the law designated as Pleadings, Practice, and Evidence.

*Can the law with regard to bail*, to indictments, to grand jury, to the trial jury, all be changed to the disadvantage of the prisoner by State legislation after the offence was committed, and such legislation not held to be *ex post facto* legislation, because it relates to procedure, as it does according to [*Bishop on Criminal Procedure*]?

And can any substantial right which the law gave the defendant at the time to which his guilt relates be taken away from him by *ex post facto* legislation, because, in the use of a modern phrase, it is called a law of procedure? We think it cannot.

*Id.* at 232, 2 S.Ct. at 452 (emphasis added).

We believe that *Kring* and its dictum respecting bail must be read in light of later Supreme Court opinions on the *ex post facto* clause. In *Beazell*, for example, the Court stated that "[e]xpressions are to be found in earlier judicial opinions to the effect that the [*ex post facto* clause] may be transgressed by alterations in the rules of evidence or procedure." 269 U.S. at 170, 46 S.Ct. at 68 (citing *Kring, inter alia*). The Court conceded that there "may be procedural changes which operate to deny to the accused a defense available at the time of the commission of his offense, or which otherwise affect him in such a harsh and arbitrary manner as to fall within the constitutional prohibition." *Id.* The Court noted that "[j]ust what alterations of procedure will be held to be of sufficient moment to transgress the constitutional prohi-

bition cannot be embraced within a formula or stated in a general proposition. The distinction is one of degree. But the constitutional provision was intended to secure substantial rights against arbitrary and oppressive legislation." 269 U.S. at 171, 46 S.Ct. at 69.

In *Kring*, the Court explained that the effect of the change in state law, which was denied application there as *ex post facto*, was that formerly conclusive evidence of innocence of the higher grade of murder could not be received at all, or was given no weight, and that the law on punishment was changed from a bar against the death penalty in such circumstances to a new law permitting such punishment. 107 U.S. at 228, 2 S.Ct. at 449. Although we are bound by that holding in *Kring*, we must view the statements concerning bail and procedural changes in *Kring* in light of the *ex post facto* standards applied by the Court in subsequent cases. We are particularly persuaded by the Court's more recent focus in *ex post facto* cases on the elements of the offense, the conditions and quantum of punishment, and the quantity and degree of proof necessary to establish guilt. *See, e.g., Weaver v. Graham*, 450 U.S. at 32–33, 101 S.Ct. at 966–967; *Dobbert*, 432 U.S. at 295, 97 S.Ct. at 2299. In light of these standards, we conclude that there is no *ex post facto* violation here by application of the new restrictive rules governing bail pending appeal, as now prescribed by § 3143(b)(2).

We are unpersuaded by the reasoning in *United States v. Cirrincione*, 600 F.Supp. 1436 (N.D.Ill.1985). There the district court held that § 3143(b)(2) violates the *ex post facto* clause. The court reasoned that a sentence which begins immediately is more severe than a sentence which commences after an unsuccessful appeal. *Id.* at 1443–46. The court said that "[w]hile the Supreme Court has not always been clear on the underlying rationales for the ex post facto clause, certainly one rationale is that an individual who acts in reliance upon the known criminal penalties for his acts must be punished in accordance with that reliance." *Id.* at 1444.

Although we agree that the *ex post facto* clauses protect an individual who acts in reliance on the known criminal penalties for his conduct, we cannot accept the *Cirincione* court's view that § 3143(b)(2) affects the punishment imposed for such conduct. A convicted defendant may wish to postpone serving his sentence until his appeal is decided, and certainly the § 3143(b)(2) standards for granting bail pending appeal are "more onerous" than those under the former law. However, § 3143(b)(2) does not in any way alter the "quantum of punishment" imposed on criminal defendants, or the elements and required proof of the offense, which are the main focus of the Supreme Court's more recent decisions. *Dobbert* illustrates the fact that significant changes, even in the procedure for imposition of the death penalty, do not necessarily violate the *ex post facto* clause.

Our conclusion is also supported by state court decisions which have upheld changes in statutes governing bail pending appeal against *ex post facto* challenges. For example, the Indiana Supreme Court has held that a state statute denying bail pending appeal by a habitual criminal was not *ex post facto* as applied to a defendant who committed the offense and was convicted before the effective date of the statute. *State ex rel. Dorton v. Circuit Court of Elkhart County*, 274 Ind. 373, 412 N.E.2d 72 (1980).[10] The court explained that the superseding statute did "not make an act criminal which was legal before the statute; nor [did] it 'provide a greater punishment therefor than was prescribed at the

time of its commission.'" *Id.* at 74 (quoting *Hopt v. Utah*, 110 U.S. 574, 579, 4 S.Ct. 202, 204, 28 L.Ed. 262 (1884)).

Moreover, the Oklahoma Court of Criminal Appeals has held that a state statute prohibiting bail pending appeal if a defendant was convicted of rape or forcible sodomy, among other things, was not *ex post facto* as applied to a defendant who committed the offense before the effective date of the statute. *Spitznas v. State*, 648 P.2d 1271 (Okla.Crim.App.1982). The court concluded that the statute was procedural and did not inflict greater punishment than the law imposed at the time the offense was committed. *Id.* at 1275–76.

In addition, the District of Columbia Court of Appeals has held that a statute providing for pretrial detention of defendants charged with first degree murder was not *ex post facto* as applied to a defendant who committed the crime before the effective date of the statute. *De Veau v. United States*, 454 A.2d 1308 (D.C.App.1982), *cert. denied*, 460 U.S. 1087, 103 S.Ct. 1781, 76 L.Ed.2d 351 (1983). The court emphasized that the statute did not "impose (or increase) punishment ... or [make] formerly legal conduct a crime." *Id.* at 1314.[11]

We therefore hold that the § 3143(b)(2) standards governing bail pending appeal are not *ex post facto* as applied to a defendant where the offenses charged and the resulting convictions occurred before the effective date of the Act, but the sentences and the order by the district court denying bail pending appeal were entered after that date.

**10.** The court explained that "[t]he necessity to protect society against further criminal acts by a convicted, but unpunished, person [by denying bail pending appeal] outweighs society's interest in protecting persons who may have a reversible conviction." 412 N.E.2d at 74.

**11.** *But see Greene v. State*, 238 So.2d 296, 300–01 (Fla.1970) (application of bail statute to deny bail pending appeal from conviction on second felony violated *ex post facto* clauses where bail statute became effective after commission of second felony); *Cunningham v. State*, 423 So.2d 580 (Fla.Dist.Ct.App.1982) (per curiam) (*ex post facto* clause prohibited application of statute denying bail pending appeal of drug trafficking

conviction to defendant who committed offense before effective date of statute); *cf. Parker v. State*, 667 P.2d 1272 (Alaska Ct.App.1983) (right to bail pending appeal sufficiently accrued at time of offense under state statute so that statute passed after date of offense but before conviction which eliminated bail for persons convicted of certain felonies did not apply to defendant); *Ellis v. State*, 544 S.W.2d 908, 911 (Tenn.Crim.App.1976) (statute denying bail pending appeal to defendants convicted of possession of controlled substances with intent to sell had "ex post facto overtones" when applied to defendants who were arrested after effective date of statute).

## III

### Interpretation of 18 U.S.C. § 3143(b)(2)

Section 3143(b)(2) as amended by the Bail Reform Act requires that bail pending appeal be denied unless the court finds that the appeal "raises a substantial question of law or fact likely to result in reversal or an order for a new trial." The parties in both the *Affleck* and *Kowalik* cases contend that we should interpret this requirement in light of the two-step analysis announced by the Third Circuit in *United States v. Miller*, 753 F.2d 19 (3d Cir. 1985). The Government, however, argues that a stricter interpretation than that of *Miller* should be applied to determine what constitutes a "substantial" question of law or fact.

In *Miller*, the Third Circuit held that the language quoted above requires the court to make two determinations in order to grant bail pending appeal. First, the court must decide that the appeal raises a "substantial" question of law or fact. Second, "if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed." *Id.* at 24. This approach has been followed in other cases. *See United States v. Powell*, 761 F.2d 1227, 1230–1234 (8th Cir.1985) (en banc); *United States v. Handy*, 761 F.2d 1279, 1280 (9th Cir.1985) (per curiam); *United States v. Giancola*, 754 F.2d 898, 900–901 (11th Cir.1985); *see also United States v. Polin*, Nos. 85–5009, 85–5010, slip op. at 2 (4th Cir. March 4, 1985) (opinion of Murnaghan, Circuit Judge, as a single circuit judge). We adopt the *Miller* two-step analysis for determining whether to grant bail pending appeal under § 3143(b), but we apply a somewhat stricter interpretation of what constitutes a "substantial" question of law or fact, which we believe the statute and its purpose require.

What constitutes a "substantial" question under the first prong of this test must be considered in light of congressional intent. Under former § 3148, bail pending appeal would be denied if the appeal was "frivolous." The new Act was intended to reverse the presumption in favor of bail pending appeal under the former law and to make the standards for granting bail pending appeal more stringent. *See* S.Rep.No. 225, 98th Cong., 1st Sess. 26–27, *reprinted in* 1984 U.S.Code Cong. & Ad. News 3182.

Accordingly, we agree with the Eleventh Circuit that "a 'substantial question' is one of more substance than would be necessary to a finding that it was not frivolous. It is a 'close' question or one that very well could be decided the other way." *Giancola*, 754 F.2d at 901. In *Miller*, the Third Circuit said that a "substantial" question under § 3143(b)(2) "is one which is either novel, which has not been decided by controlling precedent, or which is fairly doubtful." *Miller*, 753 F.2d at 23.[12] We agree with the Eleventh Circuit, however, that a question "which has not been decided by controlling precedent" may not be "substantial" under § 3143(b)(2). For example, an issue may be "so patently without merit that it has not been found necessary for it to have been resolved.... Similarly, there might be no precedent in this circuit, but there may also be no real reason to believe that this circuit would depart from unanimous resolution of the issue by other circuits." *Giancola*, 754 F.2d at 901.[13] In the final analysis, we cannot define blanket categories for what will constitute "substantial" questions under § 3143(b)(2). Therefore, whether a particular question is "substantial" must be determined on a case-by-case basis, under the general guidelines we adopt as quoted above. *See Giancola*, 754 F.2d at 901.

The second prong of the *Miller* test poses less of a definitional problem. Under this second prong, bail pending appeal is

---

12. *See also Handy*, 761 F.2d at 1281 ("substantial" question is one that is "fairly debatable").

13. Of course, a "substantial" question must be one which can be properly raised on appeal. *See Gianola*, 754 F.2d at 901 n. 4.

appropriate if, assuming that the "substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed." *Miller*, 753 F.2d at 24. The Third Circuit further explained that this language

> must be read as going to the significance of the substantial issue to the ultimate disposition of the appeal. A question of law or fact may be substantial but may, nonetheless, in the circumstances of a particular case, be considered harmless, to have no prejudicial effect, or to have been insufficiently preserved. A court may find that reversal or a new trial is "likely" only if it concludes that the question is so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial.

*Id.* at 23.[14]

In sum, we hold that in order to grant bail pending appeal, a court must find that the defendant has met his burden of proving by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or to the community if released under § 3143(b)(1), and that he has established under § 3143(b)(2)[15] that the appeal is not for purpose of delay, and:

[1.] that the appeal raises a substantial question of law or fact; and

[2.] that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

*Id.* at 24.

## IV

### Disposition

■ In *Affleck*, both the defendant and the Government agree that we should remand the case to the district court to reconsider the issue of bail pending appeal under the *Miller* two-part standard, disagreeing only on how to determine a "substantial" question of law or fact, which we have resolved. In *Kowalik*, however, both the defendant and the Government apparently agree that a remand is not appropriate. Kowalik argues that we should grant him bail pending appeal under the test he espouses, while the Government argues that we should deny bail under the standard it proposes.

We conclude that the proper disposition is to remand both cases for the district court to make findings and conclusions under the standard for determining bail on appeal which we adopt today. The Third and Eleventh Circuits made this disposition in *Miller* and *Giancola*. *Miller*, 753 F.2d

---

14. The Third Circuit rejected the view that § 3143(b)(2) requires the district court to grant bail pending appeal only upon finding that its own rulings were likely to be reversed on appeal for two reasons:

> In the first place, such a reading would render language in the statute surplusage because every question that is likely to be reversed must by definition be "substantial". In the second place, we are unwilling to attribute to Congress the cynicism that would underlie the provision were it to be read as requiring the district court to determine the likelihood of its own error. A district judge who, on reflection, concludes that s/he erred may rectify that error when ruling on post-trial motions. Judges do not knowingly leave substantial errors uncorrected, or deliberately misconstrue applicable precedent. Thus, it would have been capricious of Congress to

have conditioned bail only on the willingness of a trial judge to certify his or her own error.

> For a similar reason, the phrase "*likely* to result in reversal or an order for a new trial" cannot reasonably be construed to require the district court to predict the probability of reversal. The federal courts are not to be put in the position of "bookmakers" who trade on the probability of ultimate outcome.

*Miller*, 753 F.2d at 23; *see also Polin*, slip op. at 2 n. 2; *Handy*, 761 F.2d at 1280; *Giancola*, 754 F.2d at 900.

15. We note that, unlike § 3143(b)(1), § 3143(b)(2) does not require that the showing be made by "clear and convincing evidence." We therefore conclude that a defendant must only prove the § 3143(b)(2) criteria under the ordinary preponderance of the evidence standard.

at 24; *Giancola,* 754 F.2d at 901 & n. 5.[16] This disposition comports with Fed.R. App.P. 9(b). Rule 9(b) requires that applications for bail pending appeal be made "in the first instance in the district court." *Id.* The rule also requires the district court to "state in writing the reasons" if the court denies release pending appeal or imposes conditions on release. *Id.* The rule contemplates that the district court is in a better position to evaluate, in the first instance, the propriety of granting bail pending appeal. The rule also aids our appellate function by requiring the district court to make written findings and conclusions.

These proceedings obviously present difficulties for the parties, as well as for the trial and appellate courts. We are convinced that those difficulties will be lessened if a clear record at a hearing is made in the trial court. As noted, the defendant bears the burden of making the showings outlined above on the facts and the law, and he must present sufficient portions of the record to support the questions he raises. If this is not done, as to evidentiary matters we must give considerable deference to the trial court's determination on the substantiality of questions of fact. We can, like the trial court, independently consider questions of law.

Accordingly, we partially remand these cases to the district courts for hearings and reconsideration of the denials of the motions for bail pending appeal under the standards we adopt today, and for the district courts to make new written findings, conclusions and orders under these standards. This court otherwise retains jurisdiction of the principal appeals in these cases. The mandates for the partial remands shall issue forthwith.

McKAY, Circuit Judge, dissenting:

Since our country's inception, liberty has held a preeminent place in our pantheon of values. Our founding fathers took care to preserve it through a wealth of carefully crafted constitutional safeguards. Among them are the eighth amendment's proscription of excessive bail, the due process clause, and the ex post facto clause. In my view, the court has trivialized each of these safeguards in sustaining the constitutionality of the bail pending appeal provisions of the Bail Reform Act of 1984, and in approving the application of these provisions to defendants who were convicted of crimes committed before the Act's passage.

I believe that this is, in large measure, a consequence of the court's preoccupation with attempting to ameliorate the harsh effects of these provisions. Had the court held fast to the actual intent of Congress, the constitutional infirmity of the statute would have been readily apparent.

When the standard for release of a convicted person pending appeal under 18 U.S.C. § 3143 was first considered by trial courts and by a panel of this court, they all concluded that Congress did indeed mean what it said—bail should be denied unless the trial court finds:

> that the appeal is not for purpose of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial.

18 U.S.C. § 3143(b).

These early decisions took the statute to mean that for all practical purposes Congress intended to eliminate bail pending appeal in all but the most extraordinary cases. Subsequently, the Third Circuit fabricated from rules of judicial construction an intent that gives the appearance of significantly ameliorating the harshness of

**16.** In *Polin,* a single judge of the Fourth Circuit adopted the *Miller* standard and agreed with the district court's denial of bail pending appeal because the defendant did not meet his burden of showing that his appeal raised a "substantial" question. *Polin,* slip op. at 3–4.

In *Handy,* the Ninth Circuit adopted the *Miller* standard and disagreed with the district court's denial of bail pending appeal. The Ninth Circuit granted bail pending appeal and held that the defendant had met his burden of proving that his appeal raised a "substantial or 'fairly debatable' question of the type that calls into question the validity of the judgment." *Handy,* 761 F.2d at 1283. The Ninth Circuit remanded to the district court for imposition of the appropriate conditions of release.

the provision—even though there is no evidence that Congress had such a construction in mind. *United States v. Miller*, 753 F.2d 19 (3rd Cir.1985). Other circuits quickly fell in line. *United States v. Handy*, 761 F.2d 1279 (9th Cir.1985) (per curiam); *United States v. Giancola*, 754 F.2d 898 (11th Cir.1985); *see also United States v. Polin*, Nos. 85–5009, 85–5010, slip op. at 2 (4th Cir. March 4, 1985) (opinion of Murnaghan, C.J., as a single circuit judge).

In this case the majority, adopting the reasoning of both the Third and Eleventh Circuits, rewrites the statutory provision to read that bail may be granted by the trial court if:

1. the appeal raises a substantial question of law or fact; and

2. if that substantial question is determined favorably to the defendant on appeal, the decision is likely to result in reversal or an order for a new trial on all counts for which imprisonment has been imposed.

Thus, under the majority's attempted emasculation of the provisions of the Act, no determination need be made whether the substantial question is likely to be determined favorably upon appeal; it need only be decided whether that substantial question would likely result in reversal *if* it is so resolved on appeal.

In my view, it is regrettable that the courts have not held fast to the actual intent of Congress. This supposed amelioration will likely prove to be no amelioration at all. I am fully satisfied that the result will be essentially the same as it would were the statute interpreted literally—the denial of bail to the overwhelming majority of persons who previously would have received bail pending appeal. Such exceptions as may exist under the newly

established standards will be at best quixotic.[1]

More important, in sorting through the theoretical niceties of supposedly ameliorative standards the courts have lost sight of the fact that the statute both as written by Congress and as rewritten by them allows for the punishment of a substantial class of individuals who have not yet been finally adjudicated guilty. I am convinced that denying bail under the test set forth in the panel's opinion is contrary to the Constitution of the United States.

## CONSTITUTIONAL RIGHTS ON APPEAL

Until recently, it might have been argued that the constitutional rights that normally would attend preconviction proceedings do not accompany the appellate process. *See Ross v. Moffitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). However, the recent Supreme Court case of *Evitts v. Lucey*, —— U.S. ——, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), has drastically changed this analysis. In *Evitts* the Court found that, where a state provides for an appeal as a matter of right, "the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection clauses of the Constitution." —— U.S. at ——, 105 S.Ct. at 834. In holding that a defendant has a due process right to effective assistance of counsel on appeal, the Court stated that "in establishing a system of appeal as of right, the state had implicitly determined that it was unwilling to curtail drastically a defendant's liberty unless a second judicial decisionmaker, the appellate court, was convinced that the conviction was in accord with law." —— U.S. at ——, 105 S.Ct. at 840. The state was thus found to have "made the appeal the final step in the adjudication of guilt or innocence of the individual."[2] *Id.*

---

**1.** By my calculation, sixty-three percent of direct appeals handled by this court in the most recent reporting period involved persons who were free on bail pending appeal. The new standards will not only eliminate bail in the overwhelming majority of those cases, but I am satisfied that it will be accident rather than design if even a substantial majority of those

cases that we reverse coincide with the cases in which bail pending appeal is granted.

**2.** Justice Rehnquist, writing in dissent, vehemently objected to this characterization as "inconsistent with the general view of state appellate review expressed ... in *Ross v. Moffitt*, supra, at 610–11 [, 94 S.Ct. at 2443–44]." ——

Accordingly, in a system where a defendant has an appeal as of right, his guilt or innocence is not finally determined until the conclusion of his appeal. Under this rationale, all rights that apply to protect a defendant at the trial stage also apply at the appellate level, provided the appeal is a matter of right.

As the Supreme Court has stated, "[p]resent federal law has made an appeal from a district court's judgment of conviction in a criminal case what is, in effect, a matter of right." *Coppedge v. United States*, 369 U.S. 438, 441, 82 S.Ct. 917, 918, 8 L.Ed.2d 21 (1962) (citing 28 U.S.C. §§ 1291, 1294; Fed.R.Crim.P. 37(a)). The federal courts have, therefore, made the appeal "the final step in the adjudication of guilt or innocence" and, under *Evitts*, the full panoply of constitutional rights applies until the conclusion of the appeal.

## THE EIGHTH AMENDMENT

The traditional purpose of bail has been to ensure the presence of the defendant at trial. Higher bail than that amount reasonably calculated to fulfill this purpose is "excessive" in violation of the eighth amendment. *Stack v. Boyle*, 342 U.S. 1, 5, 72 S.Ct. 1, 3, 96 L.Ed. 1 (1951). It remains an open question, however, whether the eighth amendment provides a *right* to bail in cases where the defendant is not likely to flee. *Compare Escandar v. Ferguson*, 441 F.Supp. 53, 58 (S.D.Fla.1977) (finding that likelihood of flight is the only constitutionally permissible justification for denial of bail) *with United States v. Edwards*, 430 A.2d 1321 (D.C.App.1981), *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982) (upholding the denial of bail for the purpose of protecting the community).[3]

The Supreme Court has expressly reserved the question. *Bell v. Wolfish*, 441 U.S. 520, 534 n. 15, 99 S.Ct. 1861, 1871 n. 15, 60 L.Ed.2d 447 (1979) (refusing to decide whether any objective other than ensuring the defendant's presence at trial may constitutionally justify pretrial detention).

I would resolve the question left open in *Wolfish* by finding that prevention of flight is the only constitutionally permissible justification for the denial of bail. In my view, to say that the eighth amendment does not prevent Congress from defining classes of cases in which bail shall not be allowed but only provides that bail shall not be excessive in those cases where it is allowed "is a classic case of the cart pulling the horse since the Congress could abrogate the right to bail altogether, making the eighth amendment absolutely meaningless." *Edwards*, 430 A.2d at 1365 (Mack, J., dissenting). *See also Carlson v. Landon*, 342 U.S. 524, 556, 72 S.Ct. 525, 542, 96 L.Ed. 547 (1951) (Black, J., dissenting). Regardless of whether the English provision that provided the basis for the eighth amendment was more narrowly structured,[4] the Bill of Rights "was written and adopted to guarantee Americans greater freedom than had been enjoyed by their ancestors who had been driven from Europe by persecution." *Edwards*, 430 A.2d at 1366 (Mack, J., dissenting) (quoting *Carlson v. Landon*, 342 U.S. 524, 556, 72 S.Ct. 525, 542, 96 L.Ed. 547 *reh. denied*, 343 U.S. 988, 72 S.Ct. 1069, 96 L.Ed. 1375 (1952)). *See also* Foote, *The Coming Constitutional Crisis in Bail*, 113 U.Pa.L.Rev. 959, 1125 (1965).

Although there have been hints to the contrary in recent Supreme Court opinions, *see Carlson*, 342 U.S. at 545–46, 72 S.Ct. at

---

U.S. at ——, 105 S.Ct. at 844. *Ross* can be distinguished, however, on the ground that the appeal involved in that case was discretionary rather than as of right.

**3.** The denial of bail has historically been allowed in all capital cases, but this exception falls within the traditional justification of prevention of flight. *United States v. Kennedy*, 618 F.2d 557, 559 (9th Cir.1980) ("It has been thought that most defendants facing a possible

death penalty would likely flee regardless of what bail was set, but those facing only a possible prison sentence would not if bail were sufficiently high.")

**4.** *See* Duker, The Right to Bail: An Historical Inquiry, 42 Alb.L.Rev. 33, 58–66 (1977) (finding that the English provision did not limit Parliament's ability to define offenses as nonbailable).

536–37, and *Schall v. Martin*, —— U.S. ——, 104 S.Ct. 2403, 2410, 81 L.Ed.2d 207 (1984), it would be a travesty if we glibly abandoned the observations of the Supreme Court in *Stack v. Boyle*, 342 U.S. 1, 4, 72 S.Ct. 1, 3, 96 L.Ed. 1 (1951):

> From the passage of the Judiciary Act of 1789, 1 Stat. 73, 91, to the present Federal Rules of Criminal Procedure, Rule 46(a)(1), federal law has unequivocally provided that a person arrested for a non-capital offense *shall* be admitted to bail. This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. *See Hudson v. Parker*, 156 U.S. 277, 285, 15 S.Ct. 450, 453, 39 L.Ed. 424 (1895). Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning.

Thus, in my view, the Bail Reform Act violates the eighth amendment by allowing the denial of bail on grounds unrelated to the defendant's likelihood of flight.

Even if Congress *is* free to define non-bailable offenses, certainly the allowable justifications are limited. Justice Black, sitting as a Circuit Justice, stated that "the command of the eighth amendment that 'excessive bail shall not be required * * *' at the very least obligates judges passing upon the right to bail to deny such relief only for the strongest of reasons." *Sellers v. United States*, —— U.S. ——, 89 S.Ct. 36, 38, 21 L.Ed.2d 64 (1968). *See also Truong Dinh Hung v. United States*, 439 U.S. 1326, 99 S.Ct. 16, 58 L.Ed.2d 33 (Brennan, Circuit Justice 1978); *Harris v. United States*, 404 U.S. 1232, 92 S.Ct. 10, 30 L.Ed.2d 25 (1971) (Douglas, Circuit Justice). At a minimum, the eighth amendment must prohibit unreasonable denial of bail. *Carlson*, 342 U.S. at 569, 72 S.Ct. at 548 (Burton, J., dissenting). *See also Hunt v. Roth*, 648 F.2d 1148, 1161 (8th Cir.1981), *vacated as moot in Murphy v. Hunt*, 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) ("... Congress and the states may reasonably legislate as to the right to bail for certain offenses provided the power is exercised rationally, reasonably, and without discrimination.") Surely we cannot condone the position that bail may be denied for the primary purpose of punishing a defendant prior to the final determination of his guilt, as defined in *Evitts*.

The government has a compelling interest in safeguarding the integrity of the judicial system. Denial of bail on the ground that the defendant is likely to flee furthers this interest by ensuring the defendant's presence at trial. Certainly, from the perspective of the individual denied bail on this ground, the bars are just as cold and the cell is just as bleak as if he were being punished. Whatever penal aspects are attendant to such incarceration, however, are incidental to the achievement of the state's principle purpose—the protection of the integrity of the judicial system.

This justification is, however, inapplicable in the cases before us, since the district court found on a sufficient record that bail would ensure the presence of the defendants and that neither defendant is a danger to the community requiring immediate isolation. Thus, the only possible purpose for detaining them before the guilt determination is complete, as defined by *Evitts*, is punitive. While this conclusion is not difficult to divine from the face of the statute, Congress has made our analytic task even easier by explicitly stating the intent of the statutory provisions governing bail pending appeal to be punitive. The legislative history accompanying the Act indicates that Congress believed swifter punishment is a greater deterrent to criminal conduct: "release of a criminal defendant into the community after conviction may undermine the deterrent effect of the criminal law, especially in those situations where the appeal of the conviction may drag on for many months or even years." Senate Report No. 98–225 at 26, 98th Cong., 2d Sess. (1984), U.S.Code Cong. & Admin.News 1984, p. 3209; Senate Report No. 98–147 at 562, 98th Cong., 1st Sess. (1983); Senate Report No. 97–317 at 15–56, 97th Cong.; 2d Sess. (1982). As the court noted in its memoran-

dum opinion and order in *United States v. Cirrincione*, 600 F.Supp. 1436, 1443 (N.D. Ill.1985):

> By viewing the restrictions on release pending appeal to be a deterrent to crime, Congress must have concluded that a sentence that commences immediately upon conviction is somehow more severe than a sentence which commences only after appeal. Certainly a sentence which commences before, rather than after, appeal, is more certain to be served.

Indeed, in the approximately ten percent of all criminal cases in which the appellate courts reverse convictions,[5] there is a substantial likelihood that persons will serve time in prison who would not otherwise have served at all, since some of these reversals will result in dismissals and even retrial will not necessarily result in conviction.

Denial of bail for the primary purpose of punishing the defendant is unreasonable, and therefore a violation of the eighth amendment. Accordingly, I can only conclude that, because under the statute as written by Congress and as rewritten by our court and others the denial of post-conviction bail is principally a punitive act, the statute is unconstitutional under the eighth amendment. In addition, the punitive nature of the statute leads me to conclude that the statute also violates the due process clause and the ex post facto clause.

## THE DUE PROCESS CLAUSE

The liberty protected by the fifth amendment includes freedom from punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 17, 99 S.Ct. 1861, 1871, n. 17, 60 L.Ed.2d 447 (1978). Thus, under the due process clause, a person may not be punished prior to an adjudication of guilt in accordance with due process of law. *Wolfish*, 441 U.S. at 535, 99 S.Ct. at 1871. Since a defendant is not finally adjudicated guilty until after the conclusion of his appeal, *Evitts*, —— U.S. at ——, 105 S.Ct. 831, the prohibition against punishment is still applicable while the defendant is awaiting his appeal.

The Supreme Court "has recognized a distinction between punitive measures that may not constitutionally be imposed prior to a determination of guilt and regulatory measures that may." *Wolfish*, 441 U.S. at 537, 99 S.Ct. at 1873. Thus, in analyzing the denial of bail, "the court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538, 99 S.Ct. at 1873. As discussed, the legislative history makes clear that the statutory restrictions on bail pending appeal were "imposed for the purpose of punishment." *Wolfish*, 441 U.S. at 538, 99 S.Ct. at 1873. The statute thus violates the due process clause by imposing punishment prior to a final adjudication of guilt.

The infirmity of the new statute has another dimension under the due process clause as well—one which stems from the critically overburdened state of our docket. In my view, the risk of erroneous deprivation of liberty under the new provisions will be great, for I am persuaded that in practice the substance of the legal issues raised in the petitions for bail pending appeal will receive only slight consideration.

While I have been unable to make a precise calculation, such figures as are available suggest that approximately sixty-three percent of all direct criminal appeals to this circuit involve persons who have been granted bail pending appeal. Because of the Bail Reform Act, we have pending a large number of petitions to this court to grant bail pending appeal after denial by the trial court. It is quite possible that we would have little difficulty continuing to work into our calendar an examination of cases where the only test for denial of bail is frivolity. But the test that the majority imposes ensures, as night to day, that if we take our duties under Rule 9 of the Rules of Appellate Procedure seriously, we have

---

5. Annual Report of the Director of the Administrative Office of the United States Courts, Table B-1, p. 228 (1984).

just added a mini-appeal in a large percentage of direct criminal appeals to our already unmanageable docket. Even the majority admits that "[i]n the final analysis, we cannot define blanket categories for what will constitute 'substantial' questions under § 3143(b)(2)." Op. at p. 952. The court's self-injunction that such issues must be determined on a "case-by-case basis" is the administrative equivalent of handing a rock to a drowning man. Even in the cases in which we ultimately determine that the question is not "substantial," the effort required to give conscientious judicial scrutiny to the determination of that issue will be substantial.

Notwithstanding the fact that the trial court makes the initial determination, the substantiality of an issue of law is one that this court must determine and no presumption can properly be given to the trial court's predetermination of that issue. Once a question is found to be substantial, the court must also make a determination tantamount to a harmless error determination. At this point the mini-appeal is no longer a mini-appeal. We have a duty to find harmlessness only in light of the entire record. One need say no more in order to suggest the damage we have done to our dockets, and the risk that in our overburdened state the bail decisions will not be adequately reviewed. In addition, the process impinges on the fundamental fairness of the review of the merits of each criminal appeal, for our final determination on the merits will inevitably be affected by the fact that we have already found that the legal issues raised lack substantiality. By this I do not intend even remotely to impugn either the ability or intent of the judges. The problems are simply the inevitable product of the pressures of our dockets and the nature of the human mind.

## EX POST FACTO

The ex post facto clause was adopted, in part, to protect an individual's right to fair notice when the government "increases punishment beyond what was prescribed when the crime was consummated."

*Weaver v. Graham,* 450 U.S. 24, 30, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981). In *Weaver* the Court noted that two elements must be present for a criminal law to be held ex post facto: it must apply to acts occurring before its enactment into law, and it must function to the disadvantage of the offender affected by it. The Supreme Court has repeatedly recognized, however, that a purely procedural change in the law is not ex post facto, even if a defendant is disadvantaged thereby. *See, e.g., Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), *reh. denied,* 434 U.S. 882, 98 S.Ct. 246, 54 L.Ed.2d 166 (1977); *Beazell v. Ohio,* 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925); *Hopt v. Utah,* 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884). In other cases, however, the Court has noted that a procedural change may so affect substantial rights as to fall within the ex post facto prohibition. *See, e.g., Kring v. Missouri,* 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1883); *Thompson v. Utah,* 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898). I need not linger long over the body of law addressed to the fine distinctions between those procedural changes that do affect substantial rights and those that do not, however, in light of the legislative history indicating that Congress intended the provision to be punitive. As the Court noted in *Deveau v. Braisted,* 363 U.S. 144, 160, 80 S.Ct. 1146, 1154, 4 L.Ed.2d 1109, *reh. denied,* 364 U.S. 856, 81 S.Ct. 30, 5 L.Ed.2d 80 (1960):

> The mark of an *ex post facto* law is the imposition of what can fairly be designated as punishment for past acts. The question in each case where unpleasant consequences are brought to bear upon an individual for prior conduct, is whether the legislative aim was to punish that individual for past activity, or whether the restriction comes about as a relevant incident to a regulation of a present situation....

As the court found in *Cirrincione,* "the post-conviction bail restrictions are not unrelated to punishment nor merely incidental to regulation of a present situation." 600 F.Supp. at 1443. Rather, the provisions

impose on defendants what Congress viewed as the harsher punishment of a sentence that must be served immediately rather than after the conclusion of the appeal. Indeed, for those defendants whose convictions are reversed and who are not thereafter reconvicted, the statute imposes the punishment of imprisonment on those who would not otherwise be forced to bear it. To fall into the "procedure" versus "substance" trap is intolerable under the circumstances and trivializes the seriousness of incarceration. Because the provisions are principally and fundamentally penal, they are irreconcilable with the notion that a person may be punished only to the extent that the law allowed at the time he committed the crime.

### PRE–TRIAL DETENTION

Finally, I address the issue that alarms me most of all about the court's opinion—the implications for the concept of pretrial bail inherent in the method by which the court has reached its result. I think it likely that the trivialization of premature incarceration of convicted persons prior to appeal as merely procedural will result in the same trivialization of premature incarceration of accused persons prior to trial. I hold with Justice Jackson who, sitting as a circuit justice, said:

> It is difficult to reconcile with traditional American law the jailing of persons by the courts because of anticipated but as yet uncommitted crimes. Imprisonment to protect society from predicted but unconsummated offenses is so unprecedented in this country and so fraught with danger of excesses that I am loath to resort to it, even as a discretionary judicial technique....

*Williams v. United States,* 184 F.2d 280, 282–83 (2d Cir.1950). Professor Tribe has noted that this approach bears a striking similarity to the exchange in Lewis Carroll's *Through the Looking Glass:*

> The Queen observes that the King's Messenger is "in prison now, being punished; and the trial doesn't even begin till next Wednesday; and of course the crime comes last of all." Perplexed, Alice asks, "Suppose he never commits the crime?" "That will be all the better, wouldn't it?" the Queen replies.

Tribe, *An Ounce of Detention: Preventive Justice in the World of John Mitchell,* 56 Va.L.Rev. 371, 374 (1970) (quoted in *Edwards,* 430 A.2d at 1368 (Mack, J., dissenting)).

What one thinks of the role of the eighth amendment and the due process clause in restraining unjustified detention prior to trial or pending appeal undoubtedly depends on one's experience. From our privileged position it would be quite normal for us to assume that the spectre of unjustified detention looms only in such countries as Poland or South Africa. Perhaps we would be more mindful of the past failings of our own country in this regard, and more inclined to bolster the safeguards against future lapses, if we were of Japanese origins. *See Korematsu v. United States,* 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944), *reh. denied,* 324 U.S. 885, 65 S.Ct. 674, 89 L.Ed. 1435 (1945). Our sensitivity to the dangers of unjustified or discriminatory detention might be similarly heightened if we were black or poor. *See Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), *reh. denied,* 409 U.S. 902, 93 S.Ct. 89, 34 L.Ed.2d 163 (1972) (Douglas, J., concurring) (in which the Supreme Court chronicled our history of racial and economic disparity in the execution of accused persons).

Crime is indeed one of the most serious of the problems that threaten our society, and the goal of enhancing the security of our citizenry is an important one. We should not seek to achieve it through the circumvention of constitutional safeguards, however. To fall into the "procedure" versus "substance" trap is intolerable when human liberty hangs in the balance. To punish an individual before he has been finally adjudicated guilty or to retroactively enhance the punishment for a crime is a perversion of our system of justice. In the end it will not bring either credit or

enhanced effectiveness to the criminal justice system.

I would grant both petitions to admit to bail pending appeal.

SEYMOUR, Circuit Judge, dissenting.

I generally agree with most of what Judge McKay has written and I therefore join his dissent. I write separately to note two things.

First, I am not convinced that likelihood of flight is the sole consideration that may be given to a bail decision pending appeal. I believe that circumstances could justify a denial of bail where the defendant has been convicted of a violent crime and has otherwise indicated that he is a danger to the community. Nonetheless, I fear that the language of the statute is sufficiently vague to encompass far more situations than I would consider constitutional. That is not the case here, however, and the proper contours of "likely to ... pose a danger to the safety of any other person or the community," 18 U.S.C. § 3143(b)(1), must be left to the appropriate cases.

Second, it is unfortunate that Congress has chosen to limit bail pending appeal as a reaction to the sad state of the circuit court dockets. In 1979, there were 1194 appeals filed in the Tenth Circuit; in 1984, there were 1922. Administrative Office of the United States Courts, *Federal Court Management Statistics* 11 (1984). The average time it is currently taking this circuit to handle a criminal appeal from the date of the notice to oral argument is 368 days.

In a bail opinion in 1956, Justice Frankfurter addressed the growing length of time of criminal appeals:

"Nothing has disturbed me more during my years on the Court than the time span, in so many cases that come here, between the date of an indictment and the final appellate disposition of a conviction. Such untoward delays seem to me inimical to the fair and effective administration of the criminal law. I see no reason whatever why we in this country cannot be as expeditious in dealing with criminal appeals as is true of England.

Applications for appeals are heard in the English Court of Criminal Appeal within eight weeks of conviction; in murder cases appeals 'are generally before the Court not later than three weeks after the conviction.'"

*Ward v. United States*, — U.S. —, 76 S.Ct. 1063, 1066, 1 L.Ed.2d 25 (1956). When Justice Frankfurter expressed these concerns, the case before him had been pending on appeal for four months and he expected that it would not be heard on the merits for another two months. Given this time frame, which he viewed as far too lengthy, he said:

"The Government should, I believe, be the active mover for an early hearing, thus putting upon the convicted defendant the responsibility for setting forth sound reasons for postponing such a hearing. I am not able to understand why it should not become the settled practice for the Government to move, after an appeal is taken from a conviction, for the hearing of the appeal on the stenographic minutes at the earliest possible moment that a Court of Appeals can accommodate its calendar to the disposition of business that has first call, namely, a criminal appeal. This is especially desirable in a case where bail has been denied."

*Id.* 76 S.Ct. at 1067.

I agree with Justice Frankfurter. I believe that Congress should have addressed its concern for the length of the appeal process by enacting some form of speedy appeals act rather than limiting bail. Judge McKay correctly envisions that the circuits soon will be mired in mini-appeals over the bail issues if we exercise our duty as Article III judges to review seriously the trial judge's determination that no "substantial" issue is presented. For this reason, I urge this court to expedite all criminal appeals where bail has been denied, to deny extensions of time to court reporters and brief writers, and to hear oral argument on the merits within 90 days of conviction. If at the time of oral argument the panel determines that an issue is in fact

substantial and likely to result in reversal, it can immediately order that bail be set pending the final decision on appeal. In this manner, the court can ameliorate the deprivation of liberty involved where bail has been denied to a defendant whose conviction is thereafter overturned on appeal.