**UNITED STATES of America**

v.

**John Peter GALANIS, et al.,
Defendants.**

**No. S87 Cr. 520–CLB.**

United States District Court,
S.D. New York.

Sept. 28, 1988.

See also 685 F.Supp. 901.

Vincent Briccetti, Steven Robinson, Asst. U.S. Attys., Rudolph Giuliani, U.S. Atty., New York City, for the U.S.

Brian Barrett, New York City, for defendants.

### MEMORANDUM AND ORDER

BRIEANT, Chief Judge.

On September 28, 1988, defendant John Peter Galanis was sentenced by this Court following his conviction by a jury on 44 out of 58 Counts for various federal felonies including Conspiracy, under 18 U.S.C. § 371; Filing of False Tax Returns; Securities Fraud; Interstate Travel; Interstate Transportation; Fraud by Investment Adviser; Theft of Investment Company As-

sets; Criminal Contempt; RICO; and RICO Conspiracy. This judgment of conviction was based upon a jury verdict which was returned on July 5, 1988. Arrested in California on May 13, 1987, Mr. Galanis was on bail, subject to strict pretrial supervision, from about August 1, 1987 through July 5, 1988, when the verdict was rendered, and he was continued on bail pending sentence over the objection of the Government. The terms of his bail, which also cover a pending fraud case in the Supreme Court of the State of New York, County of New York, are a Personal Recognizance Bond in the amount of Twenty Million ($20,000,000.00) Dollars, signed by defendant and co-signed by his mother, wife, sister and brother-in-law, secured by liens on four (4) parcels of real estate having an equity of 1.7 Million Dollars. Bail limits are restricted to New York State, and daily personal reporting to the Federal Pretrial Services Agency is required.

Following imposition of sentence, the defendant sought to be continued on bail pending appeal to the Court of Appeals of the Second Circuit from his judgment of conviction. The Government opposed. This Court granted the application subject to making its formal findings and conclusions in writing, which are set forth below.

The issue of release or detention pending appeal by a defendant is now regulated by Title 18 U.S.C. § 3143(b). This statute requires detention pending appeal unless the Court finds that the defendant shows by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of the community if released. 18 U.S.C. § 3143(b)(1). Also, defendant must show by a preponderance of the evidence, that his "appeal is not for purpose of delay and it raises a substantial question of law or fact likely to result in reversal or an order for a new trial." 18 U.S.C. § 3143(b)(2).

We now consider this statutory provision against its historical background. Unlike bail prior to trial, bail pending appeal was unknown to the common law. Furthermore, the constitutional provisions concerning bail have been deemed not to relate to bail pending appeal. Since 1891, when direct federal criminal appeals of right were first authorized, changing standards have been followed in deciding whether bail pending appeal should be granted. Traditionally, the most important factor has been the legal merit of the proposed appeal. An oft cited case, *Rossi v. United States*, 11 F.2d 264, 265–66 (8th Cir.1926) presented the relevant analysis:

"[O]ne who suffers imprisonment after conviction and during the pendency of his writ of errors suffers the same injustice if his case is reversed and he is acquitted that one who is denied bail before his trial and is subsequently acquitted endures, and it was to prevent just such imprisonment that the acts of Congress and the rules of court allowing bail were adopted. In view of this fact this difference in the situation of the two classes of defendants does not seem to us a sound reason for depriving convicted persons of bail during the pendency of their writs of error.

The basic principle which underlies and ought to govern the allowance of bail both before and after trial is the same, and it has been stated by the Supreme Court in these words: 'The statutes of the United States have been framed upon the theory, that a person accused of crime shall not, until he has been finally adjudged guilty in the court of last resort, be absolutely compelled to undergo * * * punishment, but may be admitted to bail, not only after arrest and before trial, but after conviction and pending a writ of error.' *Hudson v. Parker*, 15 S.Ct. 450, 453, 156 U.S. 277, 285 (39 L.Ed. 424)."

The *Rossi* Court also held:

"In the orderly and convenient administration of justice, such an application should first be made, as in the case at bar it has been made, to the District Judge who tried the case. The applicant has no absolute right to bail. The grant or refusal of his application rests in the discretion of the judge, not in his personal preference or desire, but in his sound, fair, judicial discretion, governed and exercised in accordance with the established rules of law and the controlling

decisions and practice of the federal courts upon this subject."

Additional reasons supporting bail pending appeal suggest themselves. To the extent that imprisonment is rehabilitative, a concept not entirely abandoned in currently fashionable sentencing philosophies, no rehabilitation will ensue for a defendant who is pursuing what he regards as a meritorious appeal. In the case of a sophisticated fraud such as charged here against Galanis, whose transactions have been rendered so complex as to be hardly understandable to anyone, an appellant may provide material assistance to his appellate attorney if he is readily accessible at all times to discuss the proof in the trial record and the inferences flowing therefrom. Furthermore, a defendant who is awaiting trial on related or identical crimes, as is Galanis, can present a better defense in the next trial if he is free on bail.

In *Hudson v. Parker*, 156 U.S. 277, 284, 15 S.Ct. 450, 453, 39 L.Ed. 424 (1895), Justice Gray announced the policy behind the granting of bail pending appeal:

"The statutes of the United States have been framed upon the theory that a person accused of a crime shall not, until he has been finally adjudged guilty in the court of last resort, be absolutely compelled to undergo imprisonment or punishment, but may be admitted to bail, not only after arrest and before trial, but after conviction and pending a writ of error." *Id.* at 285, 15 S.Ct. at 453.

For many years thereafter, it was generally perceived that the granting of bail pending appeal was addressed to the judicial discretion of the trial court, which would not be disturbed by an appellate court absent an abuse of that discretion. *See Garvey v. United States*, 292 F. 591, 593 (Manton, Ch. J.), (2d Cir.1923); *United States v. St. Johns*, 254 F. 794 (7th Cir. 1918), but *Cf. McKnight v. United States*, 113 F. 451, 453 (6th Cir.1902) (holding that bail pending appeal was mandatory if there was not a risk of flight.)

Interesting on this issue generally is *United States v. Motlow*, 10 F.2d 657, 659 (7th Cir.1926). In that case, involving Lem Motlow, the proprietor of the famous Jack Daniels Distillery, Supreme Court Justice Pierce Butler, sitting as Circuit Justice for the Seventh Circuit, considered the bail application of a number of defendants accused with having conspired to violate the National Prohibition Act. Justice Butler held:

"It is the purpose of the law—and many statutes, federal and state, have been enacted—to safeguard litigants so far as possible against erroneous judgments. Review in appellate courts is favored in all cases where the grounds on which it is claimed are assigned in good faith on advice of counsel that in law they are valid and well taken; and parties properly seeking review are not to be burdened by avoidable expense, loss, sacrifice or punishment."

From 1934 to 1956, Criminal Appeals Rule 6 and then Rule 46(a)(2) (1946) of the Federal Rules of Criminal Procedure provided for bail pending appeal only if the appeal involved "a substantial question which should be determined by the appellate court." With the adoption of Criminal Appeals Rule 6, the standard for granting bail pending appeal became more restrictive. The appeal had to involve a substantial question, not merely one which was not frivolous, and the burden of proof was transferred from the government to the defendant to make such a showing. *Johnson v. United States*, 218 F.2d 578 (9th Cir.1954). Once a substantial question was shown to exist, bail was a matter of discretion. *Williamson v United States*, 184 F.2d 280, 281 n. 4 (2d Cir.1950). The Bail Reform Act of 1966 left this practice intact, although it made bail more accessible prior to conviction.

With the proliferation of crime, and the increase in criminal appeals, consequent upon hypertechnical evidentiary rules, producing reversal of convictions without regard to guilt or innocence, and the availability of a free attorney to take an appeal, some social discontent arose concerning the perceived ineffectual administration of the criminal law. It came to be understood that many appeals were taken solely for

purposes of delay, and persons on bail awaiting resolution of their appeals were committing additional crimes, engaging in flight, and evading punishment.

■ Thus, the Bail Reform Act of 1984 was enacted, because Congress wished to reverse the presumption in favor of bail that had been established under the prior statute, the Bail Reform Act of 1966. Under that Act, even after conviction the defendant was entitled to bail for a non-frivolous appeal "unless the court or judge has reason to believe that no one or more conditions of release will reasonably assure that the person will not flee or pose a danger to any other person or any other community." § 3(a), 80 Stat. 214, 215 (1966) (formerly codified at 18 U.S.C. § 3148). As noted, Congress intended Section 3143 of the 1984 act to reverse the then prevailing presumption in favor of post-conviction bail; however, our Court of Appeals has noted that "we do not believe it intended to eliminate bail pending appeal...." *United States v. Randell,* 761 F.2d 122, 125 (2d Cir.1985).

I agree, and do not read the provisions of Section 3143 as intending to sterilize the discretion of the trial court on the issue of whether or not a defendant should be granted bail pending appeal. We do not believe that almost a century of bail jurisprudence of the sort reflected in Justice Butler's decision in the *Motlow* case, was intended to be lightly cast aside.

The Court of Appeals of the First Circuit has noted that "the District Judge's opportunity to view the accused at trial and to hear the evidence provides an extra dimension not available to appellate judges for forming a judgment in post-conviction release matters." *United States v. Bayko,* 774 F.2d 516, 520 (1st Cir.1985). Nor should the language of the 1984 statute be construed to curtail the deference that appellate courts should accord to the fact-finding of a district court.

■ Against this background, we next consider the necessity, under § 3143(b)(1), in order to justify bail pending appeal, that the appellant show that the appeal is not for purposes of delay and "raises a substantial question of law or fact likely to result in reversal, an order for a new trial, or a sentence that does not include a term of imprisonment."

Read literally, this statutory direction would require the trial judge, as a precondition of granting bail pending appeal, to find that the trial he or she had just concluded was so infected with error as to require a new trial under the lesser standard ("interests of Justice") imposed by Rule 33 of the F.R.Crim.P. Thus, there would never arise a case in which bail would be granted pending appeal. Judge Sloviter, writing for the Court of Appeals of the Third Circuit, was the first to consider this rather poorly drawn and redundant statutory provision. In *United States v. Miller,* 753 F.2d 19, 23 (3d Cir.1985), she held:

"For a similar reason, the phrase '*likely* to result in reversal or an order for a new trial' cannot reasonably be construed to require the district court to predict the probability of reversal. The federal courts are not to be put in the position of 'bookmakers' who trade on the probability of ultimate outcome. Instead, that language must be read as going to the significance of the substantial issue to the ultimate disposition of the appeal. A question of law or fact may be substantial but may, nonetheless, in the circumstances of a particular case, be considered harmless, to have no prejudicial effect, or to have been insufficiently preserved. A court may find that reversal or a new trial is 'likely' only if it concludes that the question is so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." (Emphasis in original).

Our own Court of Appeals in *United States v. Randell, supra,* followed *Miller,* and the decision of the Eleventh Circuit in *United States v. Giancola,* 754 F.2d 898 (11th Cir.1985).

*Randell* arose out of a situation in which the trial judge had remanded a confidence man following his conviction on numerous counts of Mail Fraud, Wire Fraud and the

inevitable RICO Count, as well as Income Tax Evasion. The Court of Appeals affirmed the order of remand. The sole issue presented was whether the trial court abused its discretion in finding that "there is no substantial question of law or fact likely to result in reversal or a new trial." The court adopted the gloss on the statute made in *Miller* and refined in *Giancola*, to the effect that "a substantial question is one of more substance than would be necessary to a finding that it was not frivolous, it is a close question or one that very well could be decided the other way." Accordingly, it appears that a substantial question is one that has more merit than a question which is merely not frivolous. The Tenth Circuit, in *United States v. Affleck*, 765 F.2d 944, 952 (10th Cir.1985), cited *Miller* with approval and held that a substantial question must be "so integral to the merits of the conviction on which defendant is likely to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." The *Randell* opinion suggests that absent such a finding as to all counts for which a sentence of imprisonment was imposed, the court must remand.

Most of this lends itself to a play on words. Conscious of the public policy that people with frivolous or non-substantial appeals should not be walking the streets, this Court must then address itself to the issue of whether John Galanis' appeal from these multiple convictions will present issues that are "substantial".

■ Little purpose would be served for this Court to anticipate or draft the articles and points which will be contained in appellant's brief. We have been informed at the sentencing hearing and by letter that the defendant, through funds provided by friends, has retained the Hon. John D. Martin, Jr., a distinguished New York attorney and former United States Attorney in this District, to draw the brief on appeal and present such arguments as he may find in this record, consisting of fifty-two (52) full days of trial. We content ourselves by noting that the appeal is taken in good faith, and not for delay, a point of which we have been assured by Mr. Martin's own representations; moreover, *any* RICO trial, and surely any trial as complex and lengthy as this trial, no matter how careful the actions of the presiding judicial officer, is likely to present a record which upon hindsight and after careful testing, contains some error. Whether such error is harmless error (which we believe it is, or we would vacate the verdict and grant a new trial) presents a question so complex and difficult that were we to make any effort to deal with it, we should cast ourselves in the role of a "bookmaker" judge, which Judge Sloviter has assured us we should not be, and a soon bankrupt bookmaker at that. We rely on the contentions of the defendant as set forth on the sentencing transcript and the law of probabilities, to support our finding that the appeal is not for the purpose of delay and that with sufficient fine-combing, skilled counsel will raise substantial questions of law or fact likely to result in either a reversal or a new trial, if not found to be harmless. In light of the convoluted nature of the case, we suspect that if any significant error is found to exist in this record, it would be sufficiently infectious to taint all counts.

■ The issue of defendant's flight must be considered as a separate question. We have noted earlier the conditions of Galanis' bail, which were intentionally made onerous by the Court so as to assure his presence. A violation of his terms of bail will have an extremely adverse effect on his family, and his sureties. It is this Court's view that there is no appreciable risk of flight.

Were Mr. Galanis inclined to flee, he could have done so at any time prior to the date of imposition of sentence. It must have been clear to him, since the verdict, that his sentence was likely to involve a substantial period of incarceration. This is obvious to any intelligent person, and this defendant is highly intelligent, with strong family ties and roots in the community. If Mr. Galanis had contemplated flight, he surely would have done so prior to the imposition of sentence. He believes himself to be innocent, and the retention of

counsel suggests to this Court that Mr. Galanis intends, in good faith, to process his appeal, rather than to become the man without a country. Mr. Galanis has been under the direct supervision of this Court's Pretrial Services Agency, and this Court has in turn followed closely the work of the Agency in monitoring his case and supervising his bail. It is quite clear that Mr. Galanis has reported faithfully and regularly to the Pretrial Services Officer, and has recognized throughout, and verbalized to the Officer that he faced a significant period of incarceration if his conviction is affirmed.

This Court finds upon what it regards as clear and convincing evidence that Galanis is not likely to flee, and that granting him bail pending appeal complies with the relevant statutory directions quoted above, as the same has been construed by *Miller, Giancola* and *Randell, supra.*

Nor is he perceived as a present danger to the community for he no longer possesses the large staff of skilled accomplices and innocent facilitators, including lawyers, bankers and accountants, nor the lavish offices, all of which were essential to his fraudulent pursuits of which he now stands convicted.

Defendant's motion to be continued on bail pending appeal is granted.

SO ORDERED.